NODAWAY VALLEY BANK,
Appellant,

v.

E.L. CRAWFORD CONSTRUCTION,
INC., et al., Respondents.

No. WD 62319.

Missouri Court of Appeals,
Western District.

Feb. 24, 2004.

Vincent F. O'Flaherty, Kansas City, MO, for appellant.

John L. Mullen, Kansas City, MO, for respondent, E.L. Crawford Construction, Inc.

Michael B. White, Kansas City, MO, for respondent, Contractors Crane & Erection Company.

Before BRECKENRIDGE, P.J., SPINDEN and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Judge.

Nodaway Valley Bank appeals the granting of summary judgment in favor of E.L. Crawford Construction, Inc., and Contractors Crane & Erection Company on Bank's claims of breach of contract, negligence, and indemnity. Bank also appeals the denial of its motion for partial summary judgment against Crawford on Bank's indemnity claim. On appeal, Bank argues that the indemnification clause contained in the construction contract required Crawford and Crane to indemnify Bank for losses it sustained during a fire. Because Bank's petition is actually a subrogation action brought on behalf of its insurer, and the contract contains a waiver of subrogation clause that is not superseded by the indemnification clause, this court finds that Bank is precluded from recovering from Crawford and Crane. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

When reviewing summary judgments, this court reviews the record, and any reasonable inferences from the record, "in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In December 1999, Crawford entered into a written agreement with Bank to provide general contracting services in the construction of an addition and renovation to Bank's building in Maryville. Bank agreed to pay Craw-

ford $2,854,133 for these services. Crawford then hired Crane as one of its subcontractors. Crane agreed to perform all of the steel erection work on the project for $111,635.

In December 2000, a fire started at the Bank's building when one of Crane's employees used a cutting torch in the area that was being remodeled. Sparks or flames from the cutting torch set fire to tarps hanging where there was an exposed wall. The tarps were owned and installed by Crawford. The fire caused Bank to incur property damage in the amount of $438,832.44. Bank's property insurer, BancInsure Insurance Company, paid this amount to Bank to cover the loss.

In May 2002, Bank filed a petition asserting claims for breach of contract, negligence, and indemnity against Crawford, and negligence against Crane. Crawford and Crane subsequently filed motions for summary judgment. In its suggestions in support of the summary judgment motion, Crawford asserted that Bank's claims were barred because the contract contained a waiver of subrogation clause. Crawford noted that in Bank's interrogatory answers, Bank stated that BancInsure was claiming a right of subrogation for the total amount of property damage Bank claimed in its petition, which was $438,832.44. Crawford further noted that the "General Conditions of the Construction Contract," one of the four documents that comprised its contract with Bank, contained a waiver of subrogation clause in which Bank and Crawford agreed to waive all rights against each other and any of their subcontractors for damage caused by fire or other causes of loss to the extent the loss was covered by property insurance that the contract required Bank to obtain. Crawford contended that the waiver of subrogation clause was valid and enforceable under Missouri law and, since

Bank's total amount of property damage was covered by BancInsure, the clause barred Bank's action against Crawford as a matter of law. In its suggestions in support of its motion for summary judgment, Crane incorporated Crawford's suggestions.

In its suggestions in opposition to Crawford's and Crane's motions for summary judgment, Bank denied that BancInsure claimed a right of subrogation in the action, noting that BancInsure was not a named plaintiff or party to the action. Bank argued that, in any event, the indemnification clause in the "Modifications to Agreement Form," another of the contract documents, superseded the waiver of subrogation clause. Bank contended that in the indemnification clause, Crawford agreed to indemnify Bank for all costs and expenses, including attorney's fees, arising out of damage to property caused by any act or omission of Crawford or the subcontractors. Bank argued that Crane also agreed to abide by the indemnification clause because the Modifications required Crawford to include a clause in the subcontracts providing that the subcontractors were bound by the terms of the agreement between Bank and Crawford. Bank relied on these arguments to make its own motion for summary judgment on its indemnity claim against Crawford.

On December 9, 2002, the trial court entered its judgment granting Crawford's and Crane's summary judgment motions and denying Bank's summary judgment motion. Bank filed this appeal.

## Standard of Review

Appellate review of a summary judgment is essentially de novo. *ITT*, 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court

does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* The moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378.

 Bank appeals both the granting of Crawford's and Crane's motions and the denial of its own motion. "Generally, the denial of a motion for summary judgment is not a final judgment that may be reviewed on appeal." *Herring v. Prudential Prop. & Cas. Ins. Co.,* 96 S.W.3d 893, 894 (Mo.App.2002). If the merits of the denied motion, however, "are inextricably intertwined with the issues in an appealable summary judgment in favor of another party, then that denial may be reviewable." *Id.* In this case, the issue in Bank's summary judgment motion—whether the indemnification clause supersedes the waiver of subrogation clause to permit Bank's claims—is inextricably intertwined with the issue in Crawford's and Crane's motions—whether the waiver of subrogation clause bars Bank's claims despite the indemnification clause. Thus, this court will reach the merits of the denial of Bank's motion.

To establish a right to summary judgment, Bank, as the claimant, had to show that there was no genuine dispute as to the material facts on which it would have had the burden of persuasion at trial. *ITT,* 854 S.W.2d at 381. Also, because Crawford, the defending party on the claim on which Bank sought summary judgment, raised affirmative defenses, Bank also had to show "that the affirmative defense fails as a matter of law" by establishing that "*any one* of the facts necessary to support the defense is absent." *Id.*

 For movants such as Crawford and Crane who are the defending parties in a lawsuit, the prima facie showing for entitlement to summary judgment is "necessarily different." *Id.* Movants who are the defending parties in a lawsuit may establish a right to judgment as a matter of law by showing:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

Once the movant makes a prima facie showing that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, the non-movant " 'may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Rule 74.04(e) (1993) [emphasis added] ).[1] In its response, the non-movant must admit or deny the movant's factual statements, set out each additional material fact that remains in dispute, and "support each factual statement asserted in the response with specific references to where each such fact

---

1. The Court in *ITT* was quoting the 1993 version of Rule 74.04(e), which was substantively the same as the 2002 version. Subsections (c) and (e) of Rule 74.04 were rewritten effective January 1, 2003, after summary judgment was entered, so this court will cite to the 2002 version.

appears in the pleadings, discovery or affidavits." Rule 74.04(c)(2).

## Waiver of Subrogation Clause Precludes Bank's Action

■ In its first point, Bank argues that Crawford and Crane were not entitled to summary judgment because the trial court erroneously concluded that a waiver of subrogation clause contained in one of the contract documents barred Bank's claims. Bank first argues that the waiver of subrogation clause does not apply to its claims against Crawford and Crane because this is not a subrogation action. Bank notes that its insurance company, BancInsure, is not a named party to its action, nor is Bank's policy with BancInsure part of the court record.

■ That BancInsure is not a party to the action is consistent with Missouri law governing the right to subrogation. *See Hagar v. Wright Tire & Appliance, Inc.*, 33 S.W.3d 605, 610 (Mo.App.2000). "In subrogation, the insured retains legal title to the claim." *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002). When the insurer pays the insured, "the insurer has a right to subrogation." *Id.* "The exclusive right to pursue the tortfeasor remains with the insured," however, and the insured "holds the proceeds for the insurer." *Id.* In this case, BancInsure paid Bank under the policy and could assert a right to subrogation of any damages recovered. Legal title to the cause of action against Crawford and Crane, however, remained with Bank. Since the exclusive right to sue for the loss remained with Bank, BancInsure would not have been an proper party to the lawsuit. Thus, that BancInsure was not a party to the lawsuit is not determina-

tive of whether this is a subrogation action. The fact that is determinative is Bank's admission in its interrogatory answers that BancInsure claims a right of subrogation for $438,832.44, the total amount of property damages sought in Bank's petition and that Bank signed a subrogation receipt. Despite Bank's present assertions to the contrary, this is a subrogation action.

■ Bank next argues that the waiver of subrogation clause does not bar its claims because an indemnification clause in one of the contract documents superseded the waiver of subrogation clause and, as a result, Crawford and Crane agreed to pay for any damages caused by anyone who performed work under the agreement. Resolution of this issue requires interpreting the parties' contract. "The interpretation of a contract is a question of law." *Dean Machinery Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo.App.2003). The primary rule in interpreting a contract is to ascertain the parties' intent and give effect to that intent. *SD Invs., Inc. v. Michael-Paul, L.L.C.*, 90 S.W.3d 75, 81 (Mo.App. 2002). To do that, this court is to rely on the plain and ordinary meaning of the words in the contract and "consider the document as a whole." *Id.* Where, as in this case, the contract consists of multiple documents, all of the documents "must be read to capture what was intended." *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995).[2]

Looking first at the language of the clauses at issue, the waiver of subrogation clause, which is found in the General Conditions document, provides, in pertinent part:

2. When the contract language is unambiguous, "the intent of the parties is to be gathered from the contract alone." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428–29 (Mo. banc 2003). "Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create an ambiguity." *Id.* at 429.

The Owner and Contractor waive all rights against ... each other and any of their subcontractors, ... for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary.[3]

The clause also provides that the waiver of subrogation "shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged."

The other contract provision at issue, the indemnification clause, is found in the Modifications document. In the indemnification clause, Crawford agreed to indemnify Bank for costs arising out of injury to persons or damages to property:

Notwithstanding the terms of the other Contract Documents, Contractor agrees to Indemnify, defend and hold Owner and Architect harmless from and against (a) all claims, causes of action, liabilities, obligations, demands, costs and expenses (including attorneys' fees) arising out of injury to (including death of) any persons or damages to property caused by any act or omission of Contractor, Owner, Architect or their agents, employees or invitees (including the joint or concurrent negligence of Owner or Architect), or in any way related to, arising out of or incidental, directly or indirectly, to the performance of this Agreement regardless of how such injury, death or damage be caused and (b) all damages, judgments and expenses (including attorneys' fees) caused by any act or omission (whether or not negligent) or [sic] Contractor or anyone who performs Work or services under this Agreement[.]

■ Under the plain language of the clauses, the waiver of subrogation clause prevents Bank from pursuing a claim against Crawford and Crane for the fire damage to the extent that such damage is covered by property insurance the contract required Bank to obtain.[4] Under the plain language of the indemnification clause, Crawford agreed to indemnify Bank for all property damage caused by any act or omission of anyone who performs services under the agreement. The indemnification clause is silent as to whether the agreement to indemnify applies to damage covered by property insurance.

Bank interprets the plain language of the waiver of subrogation clause and the indemnification clause as referring to the same subject, i.e., the allocation of respon-

---

3. The General Conditions document defines the "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." The Modifications document further explains that the "Work" "shall be interpreted to include all Work reasonably inferable from the Contract Documents, all Work reasonably required to con-

struct the Project and all Work incidental thereto."

4. Although not a party to the contract between Bank and Crawford, Crane is a third-party beneficiary of the contract because the waiver of subrogation clearly relieves it of liability for "loss to the extent covered by property insurance." As a third-party beneficiary of the contract, Crane is entitled to the benefit of the agreement despite not being a party to the contract. *Butler,* 895 S.W.2d at 21.

sibility to pay Bank for property loss. Bank argues that the two clauses conflict, because the waiver of subrogation clauses places the responsibility on the insurance company, while the indemnification clause places the responsibility on Crawford. Because of the alleged conflict, Bank contends that the indemnification clause controls, as the merger provision in the Modifications states that the Modifications "shall govern in the event of a conflict between it and any provisions of the other Contract Documents." According to Bank, the indemnification clause in the Modifications supersedes the waiver of subrogation clause in the General Conditions and makes Crawford and Crane responsible for payment to Bank of any and all property damage Bank incurs, regardless of whether the damages are covered by property insurance.

In interpreting the waiver of subrogation and indemnification provisions, however, this court cannot merely look at the two clauses in a vacuum. The clauses must be read in the context of the entire contract. *SD Invs.*, 90 S.W.3d at 81. In construing contractual provisions, this court is to avoid an interpretation that renders other provisions meaningless. *Id.* at 81–82. It is preferable to attribute a reasonable meaning to each clause and harmonize all provisions, rather than leave some provisions non-functional or nonsensical. *Id.* at 82.

The waiver of subrogation clause is contained in an article entitled, "Insurance and Bonds." This article lists the different types of insurance policies required under the contract and the party that is to obtain the policies. The waiver of subrogation clause is specifically found in the paragraph concerning property insurance. The property insurance provision provides for Bank, referred to as "Owner," to purchase and maintain a builder's risk "all-risk" policy in the amount of the contract sum, "comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles." The insurance purchased by Bank "shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project."

The article in the Modifications containing the indemnification clause is entitled, "Indemnity and Insurance," and, like the "Insurance and Bonds" article in the General Conditions, contains a paragraph listing all of the types of insurance policies and which party was responsible. Specifically, the "Indemnity and Insurance" article in the Modifications provides that Crawford is responsible for purchasing and maintaining several types of compensation and third-party liability insurance policies, including workers' compensation and employer's liability insurance, commercial general liability insurance, commercial automobile liability insurance, and an owner-contractor protective policy. The paragraph also contained the requirement that Crawford purchase and maintain a builder's risk insurance policy, which is a property insurance policy, but the parties, by agreement, struck that portion of the paragraph.

The striking of the property insurance provision in the Modifications kept the General Conditions' provision for property insurance in effect. The waiver of subrogation clause was contained in the General Conditions' property insurance provision. The striking of the property insurance provision in the Modifications indicates that the parties intended to keep the entire property insurance provision in the General Conditions in effect, including the waiver of subrogation clause.

Nevertheless, Bank argues that the indemnification clause in the Modifications was a subsequent, more specific expres-

sion of the parties' intention on the issue of the allocation of risk of Bank's property loss and, therefore, it supersedes the waiver of subrogation clause. Courts that have interpreted contracts containing both a property insurance and waiver of subrogation clause and a liability insurance and indemnification clause have determined, contrary to Bank's contention, that these clauses do not address the same type of property loss. For example, in *Trump–Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.*, 106 A.D.2d 242, 244–45, 485 N.Y.S.2d 65 (N.Y.App.Div.1985), the contract contained a procurement of property insurance and waiver of subrogation clause in the General Conditions and an indemnification and insurance clause, which required the contractor to purchase several types of liability insurance, in a typewritten agreement. In rejecting the assertion that the property insurance and waiver of subrogation clause in the General Conditions and the indemnification and insurance clause in the typewritten agreement were inconsistent, the court explained that the clauses served different purposes. *Id.* Specifically, the court reasoned that the types of insurance the contractor was required to provide and maintain under the indemnification and insurance clause, such as workers' compensation, public liability, comprehensive automobile liability, "evidence the intent of the parties that the owner would be indemnified and held harmless from liability to third parties." *Id.* at 244, 485 N.Y.S.2d 65. By comparison, the property insurance and waiver of subrogation clause in the General Conditions "required the owner to obtain first-party coverage for property loss in the event of damage to the building during construction and to waive its right of subrogation in favor of the [contractor and subcontractors]." *Id.* at 244–45, 485 N.Y.S.2d 65. The court noted that there was no

claim that the contractors failed to provide third-party coverage and, since the owner was fully reimbursed for its loss, "the indemnification provision is inapplicable and the waiver of subrogation clause governs." *Id.*

*Trump–Equitable's* distinction between a property insurance and waiver of subrogation clause and a liability insurance and indemnification clause was relied upon in *Tokio Marine & Fire Insurance Co., Ltd. v. Employers Insurance of Wausau,* 786 F.2d 101, 104–05 (2nd Cir.1986). In *Tokio Marine,* the court held that the promise made in an indemnification clause "extends only as far as the scope of the liability insurance." *Id.* at 105. The court stated that "[t]o rule otherwise would ignore the purpose of a waiver of subrogation provision, which 'in effect simply require[s]one of the parties to the contract to provide [property] insurance for all of the parties.'" *Id.* (citation omitted).

The contractual requirement that one party provide property insurance for all of the parties has been deemed significant by other jurisdictions in determining the intent of the parties in allocating the risk of first-party property loss. Specifically, courts have held that the property insurance procurement clause signals that the parties have shifted the risk of first-party property loss from each other to the insurance company:

"[W]here parties to a business transaction mutually agree that insurance will be provided *as a part of the bargain,* such agreement must be construed as *providing mutual exculpation to the bargaining parties* who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party."

*Acadia Ins. Co. v. Buck Constr. Co.,* 756 A.2d 515, 519 (Me.2000) (quoting *Gen. Cigar Co. v. Lancaster Leaf Tobacco Co.,* 323 F.Supp. 931, 941 (D.Md.1971) (emphasis added)). Because "[i]t is economically inefficient for both parties to insure against the same risk," the parties' inclusion of an insurance procurement clause indicates that the parties intended "to avoid *both* parties having to face potential liability for the *same* risk." *Id.* Because a property owner can acquire property insurance on its own, "courts have reasoned that the explanation for a provision requiring [the procurement of insurance] in a construction contract is an intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk of fire instead." *Id.* (citing *Housing Inv. Corp. v. Carris,* 389 So.2d 689, 690 (Fla.Dist.Ct.App.1980); *Tuxedo Plumbing & Heating Co. v. Lie–Nielsen,* 245 Ga. 27, 262 S.E.2d 794, 795 (1980); *Morsches Lumber, Inc. v. Probst,* 180 Ind.App. 202, 388 N.E.2d 284, 286 (1979)). If that were not the parties' intent, then each party would be responsible for obtaining their own insurance policies, and it would be unnecessary for the contract to place the duty to obtain property insurance covering both parties' interests on one of the parties. *Morsches Lumber,* 388 N.E.2d at 287.

Indeed, several of the cases that have reached the conclusion that the parties contracted away the risk of first-party property loss relied on the presence of the insurance procurement clause alone to do so, and did not require the presence of a waiver of subrogation clause. *See S. Tippecanoe School Bdg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320, 327 (1979); *Acadia Ins.,* 756 A.2d at 519 (citing *Housing Inv.,* 389 So.2d at 689–90; *Tuxedo,* 262 S.E.2d at 795; *Morsches,* 388 N.E.2d at 286–87; *Weems v. Nanticoke Homes, Inc.,* 37 Md.App. 544, 378

A.2d 190, 193–94 (1977); *Berger v. Teton Shadows Inc.,* 820 P.2d 176, 178 (Wyo. 1991)). For example, in *South Tippecanoe,* the court held that the insurance procurement requirement "was intended to constitute the exclusive source for redress of damages sustained," and the protection afforded by this requirement was "buttressed" by the waiver of subrogation clause. 395 N.E.2d at 327.

Bank's interpretation, which is that the indemnification clause requires Crawford to pay Bank for property damage regardless of whether such damage was covered by contractually-required property insurance, conflicts with both the insurance procurement requirement and the waiver of subrogation clause and essentially renders the two clauses meaningless. Such an interpretation is, therefore, contrary to principles of statutory construction. *SD Invs.,* 90 S.W.3d at 81–82. It would be pointless for Crawford to require Bank to purchase an "all-risk" property insurance policy covering the total value for the entire project and including Bank's, Crawford's, and the subcontractors' interests if Crawford intended, through the indemnification clause, to be personally responsible to Bank for any and all losses to property, even those covered by the required property insurance policy. Likewise, it would be pointless for Crawford to require Bank to agree to waive its right to seek redress from Crawford and the subcontractors for any property losses covered by property insurance if Crawford intended to personally indemnify Bank for those losses.

A reasonable interpretation of the indemnification clause that is in harmony with the insurance procurement requirement and the waiver of subrogation clause is that the indemnification clause refers to compensation and liability for losses *not* covered by the property insurance policy, that is, compensation and liability to third

parties. *Tokio Marine,* 786 F.2d at 105; *Indus. Risk Insurers v. Garlock Equip. Co.,* 576 So.2d 652, 656–57 (Ala.1991); *Trump–Equitable,* 106 A.D.2d at 244–45, 485 N.Y.S.2d 65. This interpretation is consistent with the parties' intent, as manifested in the property insurance procurement requirement and the waiver of subrogation clause, to shift the risk of each other's loss to the insurer to the extent the loss is covered by property insurance. To the extent the loss is for compensation and liability to third parties, the indemnification clause shifts the loss from Bank, as the owner of the property, to Crawford.

The indemnification clause in the Modifications does not conflict with and, therefore, does not supersede, the waiver of subrogation clause contained in the General Conditions. As a result, Bank's claims against Crawford and Crane were barred, as a matter of law, by Crawford and Crane's affirmative defense of waiver of subrogation. The trial court did not err in granting summary judgment in favor of Crawford on Bank's claims of breach of contract, negligence, and indemnity, and in favor of Crane on Bank's negligence claim. Nor did the court err in denying Bank's motion for summary judgment on its indemnity claim against Crawford, which is the allegation of error in Bank's second point. Bank's first and second points are denied.

### Waiver of Subrogation as to Crane Not Limited

■ In its third point, Bank contends that if this court finds, as it has, that the indemnification clause did not invalidate the waiver of subrogation clause, the waiver of subrogation clause against Crane was limited in scope to the value of Crane's subcontract, which was $111,645. Bank bases its argument on the holding in *Butler,* 895 S.W.2d at 21–22. In *Butler,* the Supreme Court interpreted a waiver of subrogation clause nearly identical, in pertinent part, to the waiver of subrogation clause in this case. *Id.* at 21. Specifically, the Court interpreted that part of the clause that states that the waiver is granted " 'to the extent covered by property insurance obtained pursuant to this paragraph [11.4] or other property insurance applicable to the Work.' " *Id.* at 21–22. The Court noted that the definition of "Work" in the contract is " 'the construction and services required by the Contract Documents, whether completed or partially completed and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations.' " *Id.* at 22. The Court stated that its interpretation was "strengthened" by other provisions in the contract that "require[ ] the contractor to purchase and maintain insurance for damages in excess of the value of the work itself." *Id.*[5] The Court concluded that "[t]he obvious meaning" of these provisions "is that the waiver of subrogation is only effective to the extent of the value of the 'Work.' " *Id.* The Court, therefore, held that the owner waived its rights to recovery against the contractor only to the extent of the value of the Work. *Id.* The contractor, if found to have been negligent, could be held liable for damages in excess of the value of the Work. *Id.*

Rather than aid Bank, however, *Butler* supports the conclusion that the waiver of subrogation is enforceable to the extent that the property damage is covered by the contractually-required property insurance. In concluding that the contractor

---

5. A similar provision in the contract in this case required Crawford to obtain contractor's liability insurance to cover "claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom[.]"

could be held liable for any damage in excess of the value of the Work, the Court noted that the owner was required to obtain property insurance covering the entire value of the Work, while the contractor was required to purchase and maintain insurance for damage in excess of the value of the Work. *Id.* The implication of *Butler*, based upon the contractual provisions cited by the Court, is that the Court interpreted the waiver of subrogation clause to be limited to damage covered by the property insurance applicable to the Work. To the extent that property damage is not covered by property insurance applicable to the Work, the contractor can be held liable.

The only evidence before this court is that all of the property damage claimed was covered by the property insurance applicable to the Work.[6] Thus, the waiver of subrogation covered the entire amount of Bank's claim against Crane. Bank's third point is denied.

Summary judgment in favor of Crawford and Crane is affirmed. The denial of Bank's summary judgment motion is affirmed.

All concur.

---

**6.** Bank argues that it has incurred attorney's fees, interest, and costs in excess of the property damage and that are not covered by the property insurance. Bank is not entitled to these expenses, however, unless Crawford and Crane are found liable for the property damage. Since Bank waived Crawford and Crane's liability for the property damage incurred in this case, Bank cannot use these extra expenses as a basis for claiming that it is owed damages other than property damage covered by the property insurance.