**Steven AISENBERG dba Fenwick Sales & Marketing, Plaintiff,**

v.

**HALLMARK MARKETING CORPORATION, Defendant.**

**No. CIV.A.02–40121–NMG.**

United States District Court,
D. Massachusetts.
Central Division.

March 31, 2004.

Mary Ellen Manning, Attorney Mary–Ellen Manning, Peabody, MA, for Steven Aisenberg, dba Fenwick Sales & Marketing, Plaintiffs.

John C. Wyman, Murtha Cullina, LLP, Susan J. Baronoff, Murtha Cullina Roche Carens & DeGiacomo, LLP, Boston, MA, for Hallmark Marketing Corporation, Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this civil action, Plaintiff Steven Aisenberg, doing business as Fenwick Sales & Marketing ("Aisenberg") alleges that Defendant Hallmark Marketing Corporation ("Hallmark") breached its contract with him (Count I), breached the covenant of good faith and fair dealing (Count II), interfered with his contractual and advantageous relations (Count III), engaged in unfair competition (Count IV) and misappropriated his business opportunities (Count V).

### I. *Factual Background*

Aisenberg operates as the sole proprietor of Fenwick Sales & Marketing and has his principal place of business in Northborough, Massachusetts. Hallmark is a Delaware corporation with its principal place of business in Kansas City, Missouri.

The following facts are, except where otherwise indicated, undisputed and are set forth as alleged in the memoranda and exhibits in support of cross-motions for summary judgment, in the oppositions thereto and in the Plaintiff's Motion to Strike Portions of Hallmark's Statement of Undisputed Facts.

In October, 1995, Aisenberg was selected by Hallmark to serve as a sales representative for Hallmark's Party Express line of party goods. There was no discussion at that time of specific accounts or stores that would be assigned to Aisenberg. On November 1, 1995, Aisenberg and Hallmark entered into a contract ("the Agreement") pursuant to which Hallmark agreed to pay Aisenberg commissions based upon net shipments of party goods to approved Non–Hallmark Retailers within the area of Aisenberg's sales coverage. The Agreement specifically provided, however, that Aisenberg was not entitled to commissions based upon sales made to Non–Hallmark Retailers which had been designated "House Accounts" and were therefore handled internally by Hallmark's corporate offices.

The Agreement further provides that Aisenberg would be the exclusive representative for the Party Express Line within his territory but that Hallmark reserved the right

> to sell direct to and pay no commission on the House Accounts listed in Exhibit B and any other Non–Hallmark Retailer within the Territory that Hallmark, after written notice to [Aisenberg], chooses to add as a House Account in the future, whether or not previously called on by [Aisenberg].

The Big Party was an approved Non–Hallmark Retailer within the meaning of the Agreement.

Aisenberg disputes The Big Party's status as a Non–Hallmark Retailer on the grounds that The Big Party carried an unspecified amount of Party Express products before the execution of the Agreement. However, David Crane ("Crane"), who previously served as Hallmark's National Sales Manager for the Party Express line of products, explained in an affidavit that Non–Hallmark Retailers were those retailers that did not carry the full line of Hallmark or Ambassador brand greeting cards and personal expression

products. Therefore, according to Hallmark, a retailer could properly be characterized as a Non–Hallmark Retailer, despite the fact that it may have previously sold some Hallmark products.

During 1996, Hallmark paid Aisenberg commissions on sales of Party Express products to The Big Party. Those payments were made according to the calculations set forth in the Agreement. In the Fall of 1996, Jeff Olsen ("Olsen"), a Regional Retail Sales Executive for Party Express in Boston, informed Aisenberg that Hallmark was considering the addition of The Big Party as a Hallmark House Account.[1] In January, 1997, Aisenberg wrote to Olsen to attempt to persuade him that Aisenberg should continue to serve as an independent sales representative to The Big Party account.

In March or April, 1997, Crane informed Aisenberg that Hallmark would take The Big Party account "inside" and that Aisenberg would no longer receive commissions on sales to The Big Party after they equaled his commissions for the prior year on the same account.[2] In or about May, 1997, Hallmark stopped paying Aisenberg commissions on sales of Party Express products to The Big Party and that retailer became a Hallmark House Account.

Aisenberg commenced this action in Massachusetts Superior Court on April 14, 2002 and Hallmark removed it to this Court on July 2, 2002. Pursuant to 28 U.S.C. § 1332(a)(1), jurisdiction is properly based upon diversity of citizenship and the fact that the amount in controversy exceeds $75,000. Now pending are cross-motions for summary judgment and Aisenberg's Motion to Strike Portions of Hallmark's Statement of Undisputed Facts.

## II. *Legal Analysis*

### A. The Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in

---

1. According to Crane's affidavit, Hallmark's expectation that The Big Party would continue its rapid growth necessitated bringing the retailer in-house for purposes of "greater contact with and service from Hallmark's corporate offices[.]"

2. Although Aisenberg claims that Hallmark did not provide written notice of its intent to convert The Big Party to a House Account, as required by the Agreement, Crane asserts in a supplemental affidavit that "to the best of [his] recollection," such notice was provided "following verbal notification."

the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Choice of Law

■ The Agreement contains a provision specifying that it "shall be governed by the law of the State of Missouri." Massachusetts courts honor such choice of law provisions, "[i]n the absence of a conflict with public policy[.]" *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.,* 986 F.2d 607, 610 (1st Cir.1993), *citing Morris v. Watsco, Inc.,* 385 Mass. 672, 674–75, 433 N.E.2d 886, 888 (1982). Thus, while that choice of law provision naturally applies to Count I for a breach of contract, it also applies to Count II for a breach of the implied covenant of good faith and fair dealing because such a claim has been held to sound in contract rather than in tort. *See Crellin Tech., Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 10 (1st Cir.1994); *Bertrand v. Quincy Mkt. Cold Storage & Warehouse Co.,* 728 F.2d 568, 571 (1st Cir.1984). Counts I and II are therefore governed by Missouri law.

Counts III, IV and V raise a more problematic question with respect to which law to apply. That is because those claims implicate rights and obligations of the parties rather than the Agreement itself which is all that is specifically subject to the choice of law provision. The First Circuit Court of Appeals has, however, held that where a breach of contract is an essential element of a tort claim, a contractual choice of law provision also governs the tort actions arising therefrom. *See Northeast Data Sys.,* 986 F.2d at 609–10 (reducing a claim for violation of M.G.L.c. 93A, § 1 *et seq.* to a contract claim and holding that the parties' choice of California law governed).[3]

Moreover, this Court chooses to apply Missouri law to Counts III, IV and V because Massachusetts law would bar their consideration under the three-year limitation period on tort claims. *See M.G.L.c.* 260, § 2A; *Prescott v. Morton Intern., Inc.,* 769 F.Supp. 404, 406 (D.Mass.1990). That is so because Aisenberg became aware that Hallmark had stopped paying him commissions in 1997 and the limitations period on his tort actions under Massachusetts law therefore expired in 2000. *See Riley v. Presnell,* 409 Mass. 239, 244, 565 N.E.2d 780, 785 (1991).

### C. Analysis

#### 1. Contract Claims

■ A breach of contract claim under Missouri law "requires proof of a valid contract, performance by the party seeking to enforce the agreement, non-performance by the other party, and damages." *E.A.U., Inc. v. R. Webbe Corp.,* 794 S.W.2d 679, 685 (Mo.Ct.App.1990). Where a court must interpret a contract to ascertain whether a breach has occurred, "the primary rule...is to ascertain the parties' intent and give effect to that intent." *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.,* 126 S.W.3d 820, 825 (Mo.Ct.App.2004). To do so, courts "rely on the

---

**3.** *But see Jacobson v. Mailboxes Etc. U.S.A., Inc.,* 419 Mass. 572, 580 n. 9, 646 N.E.2d 741, 746 n. 9 (1995)(leaving open the possibility that, with respect to a Chapter 93A claim, the court would decline to enforce a contractual choice of law provision on public policy grounds where the provision did not specify that California law would govern the rights of the parties).

plain and ordinary meaning of the words in the contract and consider the document as a whole." *Id., quoting SD Invs., Inc. v. Michael–Paul, L.L.C.,* 90 S.W.3d 75, 81 (Mo.Ct.App.2002). The intent of the parties is to be gathered "from the contract alone" when the language of the agreement is unambiguous. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428–29 (Mo.2003)(en banc).

■ According to a review of the cited Missouri law and an examination of the unambiguous terms of the Agreement, Hallmark was within its rights under the Agreement to bring The Big Party "inside" and therefore is not liable to Aisenberg for a breach of contract. The Agreement manifests an intent by the parties to divide the merriment-making universe into Hallmark and Non–Hallmark worlds. The fact that The Big Party may have sold some Party Express products prior to the execution of the Agreement does not remove it from the orbit of the latter.

Indeed, by arguing that The Big Party was a Non–Hallmark Retailer for purposes of his entitlement to commissions yet at the same time was not susceptible to being brought "in-house", Aisenberg proposes an inconsistent interpretation of the contract. This Court declines to adopt the inconsistency. *See* Restatement (Second) of Contracts § 202(5)(1981)

> (Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.)

Aisenberg may not avail himself of the benefit of The Big Party's status as a Non–Hallmark Retailer without accepting the burden of the contractual authority Hallmark reserved for itself to take the account in-house. Thus, Hallmark did not breach the Agreement by exercising that authority and Hallmark's motion for summary judgment with respect to Count I will be allowed.

■ To establish a breach of the covenant of good faith and fair dealing under Missouri law, Aisenberg must establish that Hallmark

> exercised a judgment [i.e. a right] conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [Aisenberg] the benefit of the contract. *Missouri Consol. Health Care Plan v. Comty. Health Plan,* 81 S.W.3d 34, 46 (Mo.Ct.App.2002), *citing Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 412 (Mo.Ct.App.2000).

Although the exact requirements for proof of such a breach differ depending upon the circumstances, *see* Restatement (Second) of Contracts § 205, cmt. a (1981), Aisenberg has failed to establish that proof in this context.

The Agreement embodies the expectation that Aisenberg would receive commissions on sales to Non–Hallmark Retailers but that Hallmark had authority to remove those accounts when it became apparent that they were too large for an independent contractor. Aisenberg received the benefit of that expectation and Hallmark neither breached the terms of the contract nor evaded the spirit of the bargain. *See Missouri Consol. Health Plan,* 81 S.W.3d at 47, *citing* Restatement (Second) of Contracts § 205, cmt. d (1981). Thus, Hallmark is not liable for a breach of the covenant of good faith and fair dealing and summary judgment with respect to Count II will be allowed.

### 2. Tort Claims

■ The foregoing analysis attenuates Aisenberg's remaining tort claims. With respect to Count III for tortious interference with contractual and advantageous

relations, Missouri law requires "a breach induced or caused by defendant's intentional interference." *St. Louis Convention & Visitors Comm'n v. N.F.L.*, 154 F.3d 851, 865 (8th Cir.1998), *quoting Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo.1996)(en banc)(emphasis added). In the absence of a breach of the Agreement, Aisenberg's claim for tortious interference therefore cannot stand and summary judgment with respect to Count III will be allowed.

■ Finally, in Counts IV and V, Aisenberg alleges that he suffered damages by virtue of Hallmark's unfair competition and misappropriation of business opportunities, respectively. The gravamen of those claims is familiar: that Hallmark withheld Aisenberg's rightfully earned commissions, thereby interfering with his business and usurping his client. As explained above, Hallmark was contractually entitled to appropriate The Big Party's business and Aisenberg's reliance upon the decision of the Massachusetts Supreme Judicial Court in *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 565 N.E.2d 415 (1991), is inapposite. That case involved an employee and stockholder of a manufacturer of "high reliability metal microcircuit packages used to house electronic circuits" who left the plaintiff's employ to form a competing company. *Id.* at 166, 565 N.E.2d at 416. The court held that the employee's solicitation of co-workers to work for the newly-formed competitor violated a duty of loyalty owed to the employer. *Id.* at 174, 565 N.E.2d at 420.

Aisenberg's reliance on that lone precedent demonstrates the weakness of Counts IV and V. Those claims sound in the law of unfair competition where the underlying policy is to encourage free enterprise and competition for customer patronage. *See* Restatement (Third) of Unfair Competition § 1, cmt. a (1995). Of course, the law has long since protected certain intangible

trade values from misappropriation, *See Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239–40, 39 S.Ct. 68, 63 L.Ed. 211 (1918), but

only when the recognition of such rights is supported by other interests that justify protection, and then only when the scope of the resulting rights can be clearly defined. Restatement (Third) of Unfair Competition § 38, cmt. b (1995).

As part of the free enterprise system, parties must be able to define by contract the scope of their rights and obligations. Aisenberg and Hallmark clearly have done so here. Hallmark engaged in business practices that were specifically authorized by the Agreement. Thus, Aisenberg's claims for unfair competition and misappropriation cannot survive and summary judgment with respect to Counts IV and V will be allowed.

### ORDER

Based upon and in accordance with the foregoing memorandum, the motion of Defendant Hallmark Marketing Corporation for Summary Judgment (Docket No. 13) is **ALLOWED.** Plaintiff's Cross–Motion for Summary Judgment (Docket No. 18) and Motion to Strike Portions of Hallmark's Statement of Undisputed Facts (Docket No. 17) are **DENIED.** The Joint Motion to Stay Discovery Pending Decision of Cross–Motions for Summary Judgment (Docket No. 22) is **DENIED** as moot.

**So ordered.**