# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| KENNETH E. STOREY, TRUSTEE OF THE KENNETH E. STOREY REVOCABLE TRUST DATED NOVEMBER 13, 1998, | ) ) ) ) ) | No. ED101817<br><br>Appeal from the Circuit Court of Cape Girardeau County |
| Plaintiff/Appellant, | ) ) | |
| v. | ) ) | |
| RGIS INVENTORY SPECIALISTS, LLC and NYRA CAMPBELL, | ) ) ) | Honorable Benjamin F. Lewis |
| Defendants/Respondents. | ) | Filed: May 12, 2015 |

## Introduction

Kenneth E. Storey, Trustee of the Kenneth E. Storey Revocable Trust Dated November 13, 1998 (Storey) appeals from the trial court's grant of summary judgment in favor of RGIS Inventory Specialists, LLC (RGIS) and Nyra Campbell (Campbell) on Storey's claims for breach of contract and negligent retention and hiring. We affirm.

## Factual and Procedural Background

On November 21, 2011, Mark Carleton (Carleton), an employee of RGIS, started a fire in the RGIS offices in a building owned by Storey and leased by RGIS.

On November 19, 2012, Storey brought suit for damages to the building arising from the fire, alleging breach of contract against RGIS (Count I), negligent hiring and retention against RGIS and former RGIS employee Campbell (Count II), and intentional tort against Carleton (Count III). RGIS and Campbell filed separate motions for summary judgment.

Facts related to the claims against RGIS

Prior to this incident, in April 2006, RGIS and Storey entered into a Lease Agreement (Lease) for the leasing of office space at 1707 Mount Auburn in Cape Girardeau, Missouri (Premises). On March 25, 2008, the Lease was extended pursuant to an Extension of Lease entered into between Storey and RGIS. The Lease was still in effect under the Extension of Lease at the time of the fire. The Lease included the following provisions:

> 7. MAINTENANCE AND REPAIRS BY LESSEE: LESSEE shall, at its own expense, repair any damages to the Premises, both interior and exterior, caused by the negligence or intentional acts or omissions of LESSEE, its agents, servants, or employees, ordinary wear and tear excepted.
> …
> 9. FIRE AND CASUALTY INSURANCE: LESSOR, at its costs, shall obtain and maintain at all times during the term of this Lease with a reasonable insurance company, for the benefit of LESSOR and LESSEE as their respective interests may appear, Insurance on the Premises and any and all improvements which are now on or are to be erected or remodeled on the Premises, Insuring against loss or damage by fire and other hazards, casualties, contingencies and risks embraced with the term "extended coverage" in an amount equal to the estimated replacement cost of said improvements. LESSEE will carry Business Owners coverage to cover leasehold improvements made by LESSEE in the interior of the building along with fixtures and equipment at LESSEE's sole cost and expense.
> …
> 25. SURRENDER: Upon the expiration or sooner termination of the Lease, LESSEE, at its sole expense shall remove from the Premises all merchandise, furniture, furnishings, equipment and other personal property belonging to it not affixed or attached to any part of the Premises and shall quietly and peaceably surrender possession of the Premises in good order and repair and in clean and sanitary condition, reasonable wear and tear and damage by fire, other casualty or the elements excepted….

Facts related to the claim against Campbell

Storey alleged in his Petition that Campbell was negligent in hiring and/or retaining Carleton as an employee of RGIS. Campbell worked for RGIS between June

2

19, 2009 and October 14, 2012.  In her affidavit, Campbell asserted that during her employment with RGIS she never hired or fired any employee with RGIS and she did not have the authority to hire or fire employees.  Cynthia M. Myers, acting Vice President of Human Resources for RGIS, asserted in her affidavit that Campbell never possessed the authority to hire or fire RGIS employees and was not involved in the process of hiring Carleton.

In response, Storey denied that Campbell did not hire Carleton and did not have the authority to terminate Carleton's employment and attached his affidavit asserting Campbell was his "local contact person at RGIS…and was held out as being the main supervisor over inventory and employees at the Cape Girardeau office."

On May 15, 2014, the trial court entered summary judgment in favor of RGIS and Campbell on all counts, finding there were no genuine issues of material fact and that they were entitled to judgment as a matter of law.  On July 30, 2014, Storey dismissed his claims against Carleton without prejudice.  This appeal follows.

Points Relied On

In his first point on appeal, Storey contends the trial court erred in entering judgment in favor of RGIS because RGIS breached the Lease by failing to pay for damages caused by Carleton, in that the Lease required RGIS to pay for damages intentionally caused by its employees and Carleton pled guilty to arson for setting the fire on November 21, 2011.

In his second point on appeal, Storey argues the trial court erred in entering summary judgment in favor of Campbell because there was a genuine issue of material

3

fact as to whether she, on behalf of RGIS, negligently hired or retained Carleton in that Carleton had a significant criminal history of property destruction prior to being hired.[1]

Standard of Review

We review the circuit court's grant of summary judgment *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ITT Comm. Fin. Corp., 854 S.W.2d at 376; Rule 74.04(c).[2] The record is viewed in the light most favorable to the party against whom judgment was entered. Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007).

A defendant, as the movant, can establish a prima facie case for summary judgment by showing any of the following: (1) facts that negate any one of the elements of a claimant's cause of action; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support movant's properly pleaded affirmative defense. Sloss v. Gerstner, 98 S.W.3d 893, 896 (Mo. App. W.D. 2003).

---

[1] RGIS sought summary judgment on both the breach of contract and negligent hiring and retention claims against it. The trial court granted such. Storey does not challenge the trial court's grant of summary judgment in favor of RGIS on his claim for negligent hiring and/or retention.
[2] All rule references are to Mo. R. Civ. P 2014.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. Crow v. Crawford & Co., 259 S.W.3d 104, 113 (Mo. App. E.D. 2008). The non-movant may not rest upon mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial. Id. "Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." Premier Golf Missouri, LLC v. Staley Land Co., LLC, 282 S.W.3d 866, 871 (Mo. App. W.D. 2009). We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook, 239 S.W.3d at 634.

## Discussion

### Point I

In his first point, Storey argues the trial court's judgment finding in favor of RGIS failed to give effect to all of the Lease provisions and effectively nullified the Lease's indemnification clause.

The interpretation of a contract is a question of law. Nodaway Valley Bank v. E.L. Crawford Const., Inc., 126 S.W.3d 820, 825 (Mo. App. W.D. 2004). The primary rule in interpreting a contract is to ascertain the parties' intent and give effect to that intent. Id. The court is to rely on the plain and ordinary meaning of the words in the contract and to consider the document as a whole. Id. The clauses must be read in the context of the entire contract. Id. at 827. Interpretations that render provisions meaningless should be avoided. Id. It is preferable to attribute a reasonable meaning to

5

each clause and harmonize all provisions, rather than leave some provisions non-functional or nonsensical. Id.

Paragraph 9 of the Lease is an insurance procurement clause requiring Storey to "obtain and maintain at all times during the term of this Lease…for the benefit of LESSOR and LESSEE as their respective interests may appear, Insurance on the Premises and any and all improvements which are now on or are to be erected or remodeled on the Premises, Insuring against loss or damage by fire and other hazards, casualties, contingencies and risks embraced with the term 'extended coverage' in an amount equal to the estimated replacement cost of said improvements."

The plain language of this provision obligated Storey to procure insurance on the Premises and all improvements for the benefit of Storey and RGIS against loss or damage by fire and other hazards, casualties, and contingencies in an amount equal to the estimated replacement cost. Pursuant to the insurance procurement clause, Storey was contractually obligated to RGIS to carry insurance on the property to the mutual benefit of both parties. See Monsanto Chem. Co. v. Am. Bitumuls Co., 249 S.W.2d 428, 431 (Mo. 1952). Storey's agreement to procure insurance in an amount equal to the estimated replacement cost for the benefit of both parties satisfies in full any claim for fire damage Storey may have had against RGIS. Id.

This interpretation is further supported by paragraph 25, the surrender clause, which provides that upon expiration or termination of the lease, RGIS would "surrender possession of the Premises in good order and repair and in clean and sanitary condition, reasonable wear and tear and *damage by fire, other casualty or the elements excepted* [emphasis added]." The combination of the insurance procurement clause and the

6

surrender clause demonstrates the parties' intent to exempt RGIS from liability for loss from fire.

Storey's assertion that this interpretation nullifies paragraph 7, an indemnification clause requiring RGIS to repair any damage to the Premises caused by the negligence or intentional acts or omissions of RGIS or its employees, is without merit. The insurance procurement and surrender clauses only protect RGIS from liability for damage from "fire and other hazards, casualties, contingencies and risks embraced with the term 'extended coverage'" or from "fire, other casualty or the elements expected." Under the indemnification clause, RGIS was still liable for damage from other sources caused by the negligent and intentional acts of its employees.

Missouri courts have repeatedly recognized that such insurance procurement clauses require one party to maintain the prescribed insurance and prohibit the parties from filing suit against each other for damages required to be covered by the prescribed insurance. See Monsanto Chem. Co., 249 S.W.2d at 432 (Missouri Supreme Court held an insurance procurement provision in contract requiring Monsanto to carry adequate insurance to cover materials held by Cal-Spray satisfied Monsanto's claims for compensation for negligence against Cal-Spray when materials were destroyed by fire); Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 278 (Mo. 1965) (Missouri Supreme Court held that a contract requiring the lessor to maintain insurance, coupled with a surrender clause that exempted loss by fire, prevented the lessor from recovering against lessee for loss from fire).

In <u>Nodaway Valley Bank</u>, 126 S.W.3d at 828, the court noted that an insurance procurement clause alone could evidence the parties' intent to shift the risk of property loss from each other to the insurance company.  The court found:

> "[W]here parties to a business transaction mutually agree that insurance will be provided *as a part of the bargain,* such agreement must be construed as *providing mutual exculpation to the bargaining parties* who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party." *Acadia Ins. Co. v. Buck Constr. Co.,* 756 A.2d 515, 519 (Me.2000) (quoting *Gen. Cigar Co. v. Lancaster Leaf Tobacco Co.,* 323 F.Supp. 931, 941 (D.Md.1971) (emphasis added)).

<u>Nodaway Valley Bank</u>, 126 S.W.3d at 828-29. The court held that a reasonable interpretation of the indemnification clause, when read in harmony with the contract's insurance procurement and waiver of subrogation clauses, was that the indemnification clause referred to compensation and liability for losses not covered by the property insurance policy.  <u>Id.</u> at 829-30.

Storey further contends that remand is necessary because there is a dispute of fact as to whether his insurance was adequate to cover the damage caused by the fire.  We disagree.  Per the terms of the contract, Storey was obligated to obtain and maintain insurance on the Premises and its improvements in an amount equal to the estimated replacement cost.  RGIS was permitted to rely on Storey's contractual obligation to do so, and if Storey chose not to carry sufficient insurance on the property, he did so at his own risk.  See <u>Rock Springs Realty, Inc.</u>, 392 S.W.2d at 278 (if lessor chooses to carry insurance for less than the full value of the property, any detriment so resulting to lessor is due to its own fault); <u>Monsanto Chem. Co.</u>, 249 S.W.2d at 432 (one party's obligation to carry 'adequate' insurance for the benefit of both parties satisfies in full that party's claim against the other party).

8

We also reject Storey's assertion that these cases are distinguishable from the case *sub judice* because they involve negligent acts and not intentional acts like arson. In Rock Springs Realty, Inc., 392 S.W.2d at 278, the court concluded that the intent of the parties was that fire insurance would be maintained by the lessor for the benefit of both parties and that an exemption from "loss of fire" would cover all fires including those caused by negligence, but not those caused by arson. However, with regard to insurance contracts, exceptions for coverage for fires caused by arson generally only apply when it is the insured or someone acting on behalf of the insured that commits the arson. McClelland v. Progressive Cas. Ins. Co., 790 S.W.2d 490, 494 (Mo. App. S.D. 1990). Arson does not defeat recovery under an insurance contract when the insured is not implicated in the act. Id. Here, Storey alleges that it was Carleton that intentionally started the fire, but nothing in the record indicates that damage was not covered under the usual insurance fire policy because neither Storey nor RGIS started the fire.

Because Storey's claims were barred by the terms of the Lease, RGIS is entitled to judgment as a matter of law. Storey's Point I is denied.

Point II

In his second point, Storey argues the trial court erred in granting summary judgment in favor of Campbell on his claim of negligent hiring and retention of Carleton because there is a genuine issue of material fact as to whether Campbell hired or retained Carleton, and a suit for negligent hiring and retention is not confined to employers but may also be brought against a supervisor or co-employee.

To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and

(2) the employer's negligence was the proximate cause of the plaintiff's injuries. <u>Reed v. Kelly</u>, 37 S.W.3d 274, 277 (Mo. App. E.D. 2000); <u>Gibson v. Brewer</u>, 952 S.W.2d 239, 246 (Mo. banc 1997). To sustain a claim based on the theory of negligent hiring and retention, the plaintiff must plead and prove that an employer-employee relationship existed. <u>Moreland v. Farren-Davis</u>, 995 S.W.2d 512, 517 (Mo. App. W.D. 1999).

Here, there exist uncontested statements of fact that Campbell did not have the authority to hire or fire any employee of RGIS and that Campbell was not involved in the process of hiring Carleton. Storey's assertion that Campbell "was held out as being the main supervisor over inventory and employees at the Cape Girardeau office" does not support a finding that Campbell played any part in RGIS hiring or retaining Carleton as an employee. As such, Campbell cannot be said to have committed any act of negligence that was the proximate cause of Storey's alleged damages. Furthermore, an employer-employee relationship is necessary to sustain a claim for negligent hiring and retention, <u>Moreland</u>, 995 S.W.2d at 517, and Storey has failed to present any relevant authority supporting his assertion that such an action may be brought against a co-employee.

Because Campbell showed facts negating an element of Storey's negligent hiring and retention claims, Campbell is entitled to judgment as a matter of law. Storey's Point II is denied.

Conclusion

The trial court's judgment granting RGIS's and Campbell's Motions for Summary Judgment is affirmed.

10

_____
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

11