**KNOB NOSTER R–VIII SCHOOL
DISTRICT, Respondent,**

v.

**Ron DANKENBRING d/b/a Ron
Dankenbring Masonry,
Appellant.**

**No. WD 66923.**

Missouri Court of Appeals,
Western District.

Feb. 13, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2007.

Application for Transfer Denied
May 29, 2007.

Michael B. White, Kansas City, MO, for appellant.

Bruce M. Easley, St. Louis, MO, for respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JJ.

ROBERT G. ULRICH, Judge.

Ron Dankenbring, d/b/a Ron Dankenbring Masonry, (Masonry) appeals the judgment against him and in favor of Knob Noster R–VIII School District (School District) for roof damages to School District's property incurred when Masonry was performing modifications to the property in accordance with a contract between the parties. In his sole point on appeal, Masonry claims the trial court erred in finding that contractual clauses do not preclude recovery against Masonry in a subrogation action for the sum expended by an insurer for roof repairs. The judgment is affirmed.

## Issue for Determination

The parties stipulated to the facts submitted to the trial court. The issue presented for determination was:

Should judgment enter in favor of [School District] and against [Masonry] in the amount of $115,353.00 because the AIA[1] clauses at issue do not preclude [School District] from recovering the $115,353.00 roof repair reimbursement payment [School District] received from MUSIC?

OR

Should judgment enter in favor of [Masonry] and against [School District] because the AIA clauses at issue do preclude [School District] from recovering the $115,353.00 roof repair reimbursement payment [School District] received from MUSIC?

## Facts

School District entered into a contract with Lico Construction Company for window replacement and air conditioning work at Whiteman Elementary School and Knob Noster High School at a price of $2,447,000.00. The contract provided that Lico "shall furnish all labor and materials and perform all work ... in strict accordance with the Project Manual dated February 9, 2000." The Project Manual included "General Conditions of the Contract for Construction, AIA Document A201—1997" and "Supplementary General Conditions." The Supplementary General Conditions modified and superceded some of the content of the General Conditions.

Lico hired Masonry as a subcontractor to brick up various window openings. In its petition, School District alleged that during the course of its work Masonry

1. The American Institute of Architects is re-    ferred to as AIA.

negligently applied an acid wash solution, thereby destroying several layers of protective galvanizing on an existing portion of the roof at Knob Noster High School, causing damage totaling $116,353.00. At the time of the damage, School District had property insurance, including "Automatic Builder's Risk," through Missouri United School Insurance Council (MUSIC). After the damage to the roof, School District submitted a claim to MUSIC. The third party administrator for MUSIC investigated the claim and paid for the repairs, less School District's $1,000.00 deductible. Masonry subsequently repaid School District its $1,000.00 deductible. MUSIC's 2001 Plan Document contains a subrogation provision as follows:

19. MUSIC'S RIGHT TO RECOVER FROM OTHERS:

In the event of any payment under this program, the Member shall execute and deliver instruments and papers and do whatever else is necessary to secure the rights of MUSIC to recover from others. The Member shall do nothing after loss to prejudice such rights. Any release from liability entered into prior to loss, however, shall not affect this coverage or the right of the Member to recover from it. Upon payment of any loss, the Member will, at MUSIC's request and expense, make claim against any party which MUSIC believes to be liable for such loss, and will use all proper and reasonable means to recover that loss, under the exclusive direction and control of MUSIC.

School District subsequently filed this subrogation action.

MUSIC is a non-profit self-insurance program comprised of member school districts. School District, and the other school districts that participate in MUSIC, maintain a self-insured retention of $250,000. MUSIC administers the "loss fund," which consists of money provided by School District and the other school districts that participate in the program. The money in the "loss fund" belongs to MUSIC's members, including School District. The money provided to School District to repair the roof was withdrawn from the "loss fund." Any money obtained from Masonry will be placed back into the "loss fund." School District's coverage under MUSIC is in excess of any insurance covering the same loss or damage.

The case was tried to the trial court upon the following stipulated facts:

1. On or about March 21, 2000, [School District] entered into a general contract with Lico Construction Company under which contract Lico Construction was to furnish all labor and materials and perform all work for the window replacement and air conditioning work at Whiteman Elementary School and Knob Noster High School.

2. [School District] complied with the terms of that general contract.

3. The terms of that general contract incorporated the Project Manual for the Knobnoster R–VIII School District dated February 9, 2000.

4. The parties agree that the foregoing Project Manual has previously been submitted to this Court and shall be part of the record on appeal.

5. As part of its terms, the Project Manual reprinted AIA Document A201–1997, General Conditions of the Contract for Construction (Document A201).

6. Article 11 of the construction contract standards promulgated by the AIA in Document A201 is labeled Insurance and Bonds, and Article 11.4 is labeled Property Insurance.

7. Article 11.4 of Document A201 contains that following three provisions:

11.4.1 *The Owner* shall purchase and maintain, during the life of this contract, Builder's "All Risk" Insurance with Fire, Theft, Extended Coverage, Vandalism, and Malicious Mischief protection. Such insurance shall be written in the names of the Owner, the Architect, and his Consultants, and Contractors and Sub–Contractors as their interest may appear. Such insurance shall be to the full insurable value of the total construction covered under the general, mechanical and electrical contracts, plus value of subsequent contract modifications and cost of materials supplied or installed by others, comprising total value for the entire project at the site on a replacement basis without optional deductibles. Including items of labor and materials connected therewith, whether in or adjacent to the structure insured, materials in place or to be used as part of the permanent construction, including surplus materials, protective fences, temporary structures, miscellaneous materials and supplies incidental to the work, the cost of which is included in the cost of the work. Such insurance policy or policies shall not cover any tools owned by mechanics, any tools, equipment, scaffolding, staging, towers, and forms owned or rented by the Contractor, the capital value of which is not included in the cost of the work, or any structure erected for housing the workmen. The insurance company or companies shall have no right to subrogation against the Owner, the Contractors, and Sub–Contractors, or other parties employed on the premises, for any work of any nature whatsoever. The Contractors should separately furnish and maintain insurance covering loss or damage from all insurable causes to any tools owned by the mechanics and tools, machinery, equipment or motor vehicles owned or rented by the Contractor, his agents, sub-contractors, material men or their employees.

And,

11.4.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

And,

**11.4.7 Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of the their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, the Architect's, consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate con-

tractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a personal entity, even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

8. Before, during and after the foregoing construction project, [School District] had property coverages on Knob Noster High School through the Missouri United School Insurance Council ("MUSIC").

9. [Masonry] was hired to brick up window openings during the aforementioned renovation project.

10. [School District] alleges that an acid wash applied by [Masonry] in the course and scope of its construction work destroyed several layers of protective galvanizing on a roof at Knob Noster High School and seeks to recover the $116,353.00 [School District] expended to repair the roof.

11. The section of the roof that was damaged by the acid wash was not within the scope of work to be performed on the project.

12. MUSIC has reimbursed [School District] for all but $1,000.00 of the $116,353.00 which [School District] expended to repair the roof. [School District] had a $1,000.00 deductible with MUSIC. [Masonry] has paid [School District] $1,000.00 to cover this deductible.

13. [Masonry] consents to entry of a judgment against it in the amount of MUSIC'S reimbursement (i.e., $115,353.00) if the Court finds that [School District] is not precluded as a matter of law from seeking to recover the same under the foregoing standard form AIA clauses.

14. Similarly, [School District] consents to entry of judgment for [Masonry] if [School District] is precluded as a matter of law from seeking to recover the same under the foregoing standard for AIA clauses.

15. The parties agree that the 2001 Plan Document from MUSIC has previously been submitted to this Court and shall be part of the record on appeal.

16. The parties agree that Exhibit 7 & 8 of the renewed motion for summary judgment and Exhibit 11 of the response thereto likewise have previously been submitted to this Court and may be part of the record on appeal.

17. [School District] admits that under the Plan Document, it could receive automatic builder's risk coverage upon notice.

18. [School District] admits that it did not obtain any new or additional policy to comply with the terms of the foregoing AIA contract [School District] entered; instead, it relied on coverages it had with MUSIC.

19. Gallagher Bassett handled [School District's] claim for the subject property damage, as the administrator for MUSIC.

20. The parties agree that all exhibits offered by either party in connection with [Masonry's] original and renewed motions for summary judgment (whether or not previously submitted to this

Court) may be part of the record on appeal.

## Trial Court's Judgment

The trial court entered judgment based upon the stipulated facts and the various exhibits proffered by both parties. As requested by the parties pursuant to Rule 73.01, the trial court prepared a brief opinion containing the grounds for its decision. It found:

The plaintiff [School District] contracted with Lico Construction to perform various construction work at Knob Noster High School (hereinafter "the project"). The defendant [Masonry] was hired as a subcontractor to perform various masonry work on the project. In performing its work, [Masonry] negligently used an acid wash which caused extensive damage to the High School's existing metal roof. The cost to repair the damage caused by [Masonry's] negligence was $116,353.00. [Masonry] has already paid [School District] the sum of $1,000.00.

There is no dispute that [School District] was to maintain "builder's risk" coverage to protect against damage to the work itself. There is no dispute that [School District] was not required to maintain coverage to protect against damage to areas of its building outside the scope of the work. There is also no dispute that the damaged roof was in no way involved in "the work."

It is [Masonry's] position that the provisions of the modified American Institute of Architects (AIA) form A201 contract utilized by the parties serves as a complete bar to the current action. It is [School District's] position that these provisions do not bar a claim for damages to property outside the scope of work. The parties have not provided any Missouri case law directly addressing the work/non-work dichotomy.

This Court finds that the "work/non-work" dichotomy does exist. The waiver clause at issue bars subrogation claims to the extent the damages were covered by property insurance applicable to "the work." The phrase "covered by any other property insurance applicable to the work" speaks for itself, and the Court finds that it applies only to the "work" and not to the damage to non-work areas.

[Masonry] has failed to submit sufficient evidence by which the Court could conclude that [School District] agreed to the blanket waiver of subrogation [Masonry] claims exists. To the contrary, paragraph 11.1.1 states that the *contractor* shall purchase insurance that will protect the contractor from claims that may arise out of the contractor's operations under the contract, whether such operations be by the contractor or by a subcontractor, for "claims for damages, *other than to the Work itself,* (emphasis added) because of injury to or destruction of tangible property, including loss of use resulting therefrom." This language plainly requires the *contractor* to purchase insurance for claims for damage to areas other than to "the work." If sections 11.4.1, 11.4.5, and 11.4.7 operate to provide a blanket waiver of all claims, then the contract would not contain a provision requiring the contractor to obtain insurance to protect against damages to non-work areas. Such insurance would not be necessary since the waiver provisions would bar all claims arising out of the construction project, whether the damages occur to the work or non-work area.

Based on the stipulated facts and evidence submitted to this Court, the Court finds that the contractual waivers of subrogation do not apply to the damage

to the school's roof which was admittedly outside the scope of "the work" to be performed on this project. Therefore, [Masonry] is held accountable for the damages caused by its negligent conduct.

Judgment is hereby entered on behalf of [School District] and against [Masonry] in the amount of $115,353.00. Costs taxed to [Masonry].

Masonry's timely notice of appeal followed.

## Standard of Review

This case was tried by the court on stipulated facts and did not require resolution by the trial court of conflicting testimony. Accordingly, the only question before reviewing authority is whether the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

## Nature of a Subrogation Action

■■■ This is a subrogation action. MUSIC paid School District's claim for damage to the roof and is attempting through the present action to recover its payment from Masonry. Consistent with Missouri law governing subrogation, School District is the named plaintiff to this action. *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 825 (Mo.App. W.D.2004). MUSIC is not a named party. When the insurer pays the insured, the insured retains legal title to the claim. Id. The insurer has a right to subrogation, however. Id. The exclusive right to pursue the tortfeasor remains with the insured, and the insured holds the proceeds for the insurer. Id.

## Analysis

In its sole point on appeal, Masonry claims the trial court erred in its judgment. It claims the General Conditions preclude School District's subrogation action because they do not allow subrogation for damages covered by property insurance. It contends that the subrogation clause bars School District's subrogation action.

■■■ Interpretation of a contract is a question of law. Id. "The cardinal rule of contract interpretation is to ascertain the parties' intentions and to give effect to that intention." *Care Ctr. of Kansas City v. Horton*, 173 S.W.3d 353, 355 (Mo.App. W.D.2005).

In order to determine the intent of the parties, it is often necessary to consider not only the contract between the parties, but subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995)(quote marks omitted). The primary contract interpretation rule is to rely on the plain and ordinary meaning of the words in the contract and to consider the document as a whole. *Nodaway Valley Bank*, 126 S.W.3d at 825. Where the contract consists of multiple documents, all of the documents must be read together in an effort to "capture what was intended." Id. (citation omitted). If the contract language is unambiguous, the intent of the parties is ascertained from the contract alone. Id. at n. 2. A contract is ambiguous if its terms are susceptible to honest and fair differences. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 860 (Mo. banc 2006). Each term of a contract should be construed to avoid rendering other terms meaningless. Id.

Masonry contends that School District's subrogation action is contractually barred. It notes that Subparagraph 11.4.1 of the Supplementary General Conditions required School District to purchase Builder's "All Risk" Insurance in the names of the owner, contractor, and sub-contractors to the full insurable value of the total construction covered under the general, mechanical, and electrical contracts comprising the total value for the entire project at the site on a replacement basis without optional deductibles. Masonry relies upon *Nodaway Valley Bank*, 126 S.W.3d at 828, for the proposition that, by agreeing to this property insurance procurement clause, School District and Lico shifted the risk of first-party property loss from one another to School District's insurance company.

In interpreting the waiver of subrogation clause at issue in this case, this court in *Nodaway* determined that, under the plain language of the clause, the clause prevents an owner from pursuing a claim against a contractor and subcontractor for damage allegedly caused by the contractor and subcontractor to the extent that the damage is covered by property insurance the contract required the owner to obtain. *Id.* at 826. The court went on to note that the waiver of subrogation clause is contained in Article 11, entitled "Insurance and Bonds," which lists the different types of insurance policies required under the contract and the party that is to obtain the policies. *Id.* at 827. As in this case, the owner in *Nodaway* was required to purchase and maintain Builder's "All Risk" insurance in the names of the owner, contractor, and subcontractors in the amount of the contract sum, "comprising total value for the entire project at the site on a replacement[2] basis without optional de-

ductibles." *Id.* The *Nodaway* court noted that a contractual requirement that one party provide property insurance for all of the parties has been deemed significant in determining the intent of the parties in allocating the risk of first-party property loss. *Id.* at 828. More specifically, courts have held that this type of clause signals that the parties have shifted the risk of first-party property loss from one another to the insurance company. *Id.* The court stated, "Because it is economically inefficient for both parties to insure against the same risk, the parties' inclusion of an insurance procurement clause indicates that the parties intended to avoid *both* parties having to face potential liability for the *same* risk." *Id.* at 829 (quote marks and citation omitted).

Noting that a property owner can acquire insurance on its own, the *Nodaway* court adopted the reasoning of other courts that the explanation for a provision requiring insurance to be procured in a construction contract "is an intention on the part of the parties to relieve each other of liability and look only to one insurer to bear the risk of [damage] instead." *Id.* (citation omitted). It stated that, if the parties had a contrary intent, "then each party would be responsible for obtaining their own insurance policies, and it would be unnecessary for the contract to place the duty to obtain property insurance covering both parties' interests on one of the parties." *Id.* The *Nodaway* court observed that several cases reaching the conclusion that the parties have contracted away the risk of first-party property loss have relied upon the presence of an insurance procurement clause alone, without requiring the presence of a waiver of subrogation clause. *Id.* It noted that the court in *South Tippecanoe School Building*

---

2. The clause in *Nodaway* used the phrase "replacement cost basis." *Nodaway,* 126 S.W.3d at 827. The clause in the case *sub judice* uses the phrase "replacement basis."

*Corp. v. Shambaugh & Sons, Inc.*, 182 Ind.App. 350, 395 N.E.2d 320, 327 (1979), held that "the insurance procurement requirement 'was intended to constitute the exclusive source for redress of damages sustained,' and the protection afforded by this requirement was 'buttressed' by the waiver of subrogation clause." *Nodaway Valley Bank*, 126 S.W.3d at 829 (quoting *S. Tippecanoe Sch. Bldg. Corp.*, 395 N.E.2d at 327).

Masonry also cites *South Tippecanoe School Building Corp.* for the proposition that in standardized AIA construction agreements to insure, the risk of loss is shifted from the parties to an insurance company. The Indiana Court of Appeals stated that with agreements to insure, the risk of loss is not intended to be shifted to one of the parties. *S. Tippecanoe Sch. Bldg. Corp.*, 395 N.E.2d at 327. Instead, "it is intended to be shifted to an insurance company in return for a premium payment." *Id.* The court concluded that the parties are "limited in recovery for property damage to the proceeds of the insurance required to be carried under the contract, rather than to the individual assets of a negligent Defendant." *Id.* at 327–28.

Relying on the holding of *Nodaway*, Masonry asserts that the School District and Lico shifted the risk of loss to School District's insurance company via the insurance procurement clause, and the waiver of subrogation clause prevents School District from pursuing a claim against Masonry for the roof damage to the extent the damage was covered by property insurance School District was contractually required to obtain.[3] It states that its contention is bolstered by the language in Subparagraph 11.4.1 of the Supplementary General Conditions, the insurance procurement clause, that the "insurance company or companies shall have no right to subrogation against the Owner, the Contractors, and Sub–Contractors, or other parties employed on the premises, for any work of any nature whatsoever."

The rules announced in *Nodaway* are inapplicable to this case. This is because the damage in the case *sub judice* was not encompassed by the Builder's Risk insurance required under the contract. School District had Builder's Risk insurance coverage through MUSIC. The policy stated:

1. **AUTOMATIC BUILDER'S RISK:**

a. PROPERTY COVERED—MUSIC covers all materials, equipment and fixtures installed or to be installed, temporary structures that are used in connection with construction, and supplies or materials on site, in transit or in storage to be used in construction or installation at a member's building project. **This Document does NOT cover any *equipment, tools or machinery* owned, leased, borrowed or rented by any contractor, subcontractor or any of its employees.**

This insurance does not provide coverage for damage to existing structures. Giving the words their plain and ordinary meaning, Builder's Risk insurance is intended to safeguard the new construction. By naming the owner, contractor, and sub-contractors as co-insureds, the work will be covered regardless of who performed the work or who owns the property. Builder's Risk insurance applies only to the value of the new work going into the project and does not apply to the value of any existing structures that may be damaged during construction. Moreover, nothing in the

---

**3.** Although Masonry is not a party to the contract between School District and Lico, it is a third party beneficiary to the contract and is entitled to its benefits. *Nodaway Valley Bank*, 126 S.W.3d at 826 n. 4.

contract required School District to maintain coverage to protect against damage to areas of its building outside the scope of the work. The contract did not require School District to have insurance covering damage to existing structures. The parties stipulated that the damaged roof was not within the scope of the work. Because of this, *Nodaway* does not dispose of Masonry's point.

The trial court found that School District's subrogation action was not barred by the contract because the damage was to a "non-work" area. Thus, it found an exception to the waiver of subrogation for damage to "non-work" areas. The trial court determined that a "work/non-work" dichotomy exists. In reaching this conclusion, the trial court focused upon the language in Subparagraph 11.4.7 of the General Conditions, the waiver of subrogation, that the owner and contractor waive subrogation rights for damages to the extent "covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work."[4] The trial court also relied upon Subparagraph 11.1.5 of the General Conditions, which requires that a contractor purchase liability insurance to cover "claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom." Utilizing this provision, the court stated, "If sections 11.4.1, 11.4.5, and 11.4.7 operate to provide a blanket waiver of all claims, then the contract would not contain a provision requiring the contractor to obtain insurance to protect against damages to non-work areas. Such insurance would not be necessary since the waiver provisions bar all claims arising out of the construction pro-

ject, whether the damages occur to the work or non-work area."

Masonry claims that the trial court's reasoning is "fallacious" and contradicts Missouri law. It states that the General Conditions do not create a dichotomy between work and non-work areas. No authority is cited for this proposition, however.

Included in the General Conditions, but not modified by the Supplementary General Conditions, was the following provision:

**11.1 CONTRACTOR'S LIABILITY INSURANCE**

**11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

. . . .

.5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom.

Subparagraph 1.1.3 defines "The Work" as:

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the

4. Both the judgment and Masonry's brief state that the language at issue is "covered by any other property insurance applicable to the work." The actual language in the contract is as stated in the opinion.

Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

Subparagraph 11.4.7 is a waiver of subrogation for damage to the extent the damage is covered by insurance required by Paragraph 11.4 or by other insurance *"applicable to the work."* (Emphasis added.) The only insurance required by Paragraph 11.4 relevant to this issue is the Builder's Risk insurance. Thus, by its express terms, the waiver is only for damage covered by the Builder's Risk insurance or by any other insurance applicable to the work. As noted, *supra,* the damage to the roof was not covered by the Builder's Risk insurance, and no other provision in the contract required insurance covering damage to existing structures, including the roof. Thus, the waiver does not bar a claim for damage to the roof. School District notes that, consistent with this analysis, other jurisdictions have held that the waiver of subrogation clause at issue in this case applies only to new construction and not to damage to existing structures. *See Town of Silverton v. Phoenix Heat Source Sys., Inc.,* 948 P.2d 9, 12 (Colo.Ct.App.1997)(citing *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15 (Mo. banc 1995)); *Fidelity & Guar. Ins. Co. v. Craig–Wilkinson, Inc.,* 948 F.Supp. 608, 611 (S.D.Miss.1996), *aff'd,* 101 F.3d 699 (5th Cir.1996); *S.S.D.W. Co. v. Brisk Waterproofing Co.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990).

■ Further, the right of subrogation was not waived pursuant to Subparagraph 11.4.5 of the General Conditions, which states that if the owner insures properties at or adjacent to the site by property insurance under policies separate from those insuring the Project, the owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages covered by this separate property insurance. It further states that all separate policies shall provide this waiver of subrogation. This is because a separate insurance policy does not exist. Instead, School District extended its coverage through MUSIC to encompass the construction work. Moreover, Subparagraph 11.4.5 states that the owner waives all rights in accordance with the terms of Subparagraph 11.4.7. As discussed, *supra,* the owner's rights under Subparagraph 11.4.7 are waived only for damage to the construction work. Because the damage occurred to "non-work" areas, Subparagraph 11.4.7 does not apply. Accordingly, Subparagraph 11.4.5 does not apply either.

■ Finally, subrogation is not waived by Subparagraph 11.4.1, which requires the procurement of Builder's "All Risk" Insurance and states, "The insurance company or companies shall have no right to subrogation against the Owner, the Contractors, and Sub–Contractors, or other parties employed on the premises, for any work of any nature whatsoever." This is because the damage to the roof was not encompassed by the Builder's "All Risk" Insurance, and, accordingly, Subparagraph 11.4.1 is inapplicable to the roof damage.

The trial court noted Subparagraph 11.1.1 of the General Conditions, which requires the contractor to purchase insurance to protect the contractor from "claims for damages, other than to the Work itself." Masonry argues that Subparagraphs 11.4.1, 11.4.5, and 11.4.7 create a blanket waiver of all claims, regardless of whether the damage was to a work or nonwork area. If this were correct, Subparagraph 11.1.1 would not be necessary, as all claims would be barred and there would be nothing against which the contractor needed to be insured. Instead, Subparagraph 11.1.1, relied upon by the trial court, supports the conclusion reached by the trial court.

Finally, Masonry argues that the only dichotomy present in the contract is one between damages that are within the value of the "work" and damages that exceed the value of the "work." It cites *Nodaway* and *Butler*, 895 S.W.2d 15, for this proposition. The owner in *Nodaway* argued that the waiver of subrogation against the subcontractor was limited in scope to the value of the subcontractor's contract. *Nodaway Valley Bank*, 126 S.W.3d at 830. The owner relied upon *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15 (Mo. banc 1995), for this proposition. In *Butler*, the Missouri Supreme Court interpreted the part of the waiver of subrogation clause that states that the waiver is granted " 'to the extent covered by property insurance obtained pursuant to this paragraph [11.4] or other property insurance applicable to the Work.' " *Nodaway*, 126 S.W.3d at 830 (quoting *Butler*, 895 S.W.2d at 21–22). The *Butler* court noted that the definition of "Work" in the contract was " 'the construction and services required by the Contract Documents, whether completed or partially completed and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations.' " [5] *Id.* (quoting Butler, 895 S.W.2d at 22). The *Butler* court's interpretation was "strengthened" by other provisions in the contract requiring the contractor to purchase and maintain insurance for damages in excess of the value of the work itself. Id. The *Butler* court concluded that the "obvious meaning" of these provisions "is that the waiver of subrogation is only effective to the extent of the value of the 'Work.' " *Id.* Accordingly, the court "held that the owner waived its rights to recovery against the contractor only to the extent of the value of the Work." *Id.* Thus, the contractor would

be held liable for damages in excess of the value of the Work. *Id.*

Utilizing *Butler*, the *Nodaway* court determined that the waiver of subrogation is enforceable to the extent that the property damage is covered by the contractually required property insurance, even if this amount is in excess of the value of the subcontractor's contract. *Id.* Masonry notes that in *Nodaway*, as in this case, the contractor was required to obtain contractor's liability insurance to cover "claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom." *Nodaway*, 126 S.W.3d at 830 n. 5. Masonry states that, under *Butler* and *Nodaway*, School District's action should be barred because the value of the damage to the roof, $116,353.00, was within the value of the work, $2,447,000.00, and was covered by contractually required property insurance with the exception of the $1,000.00 deductible, which Masonry has already repaid.

This argument and discussion is irrelevant to the point on appeal. The conclusion is not that School District's claim is permissible because the damages to the roof exceed the value of the work, which they do not. Instead, it is permissible because the waiver of subrogation applied only to damages covered by the Builder's "All Risk" Insurance or other insurance applicable to the work, and the damage to the roof does not meet that criteria. Thus, this argument does not change the analysis.

Point denied.

## Conclusion

Subparagraph 11.4.7 provides a waiver of subrogation only "to the extent covered by property insurance obtained pursuant

---

5. Work is defined identically in Subparagraph 1.1.3 in the case *sub judice.*

to Paragraph 11.4 or other property insurance applicable to the Work." "The Work" is defined as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." The school's roof was not involved in the work. The "property insurance obtained pursuant to Paragraph 11.4" does not provide coverage for damage to existing structures, including the roof, during construction. Thus, School District's claim for damage to the roof was not barred by the contract.

The judgment is affirmed.

All concur.