HAREN & LAUGHLIN CONSTRUCTION COMPANY, INC., Appellant,

v.

JAYHAWK FIRE SPRINKLER COMPANY, INC., Respondent.

No. WD 72333.

Missouri Court of Appeals, Western District.

Jan. 25, 2011.

Bryan M. Groh, Jessica R. Beever, Kansas City, MO, for Appellant.

Roger W. Warren, William P. Denning, Overland Park, KS, for Respondent.

Before: THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Presiding Judge.

Haren & Laughlin Construction Company, Inc. (H & L) appeals a summary judgment in favor of Jayhawk Fire Sprinkler Co., Inc. (Jayhawk). H & L, through its insurance company, paid for damages to a facility caused by a sprinkler system that Jayhawk, its subcontractor, had installed. H & L sued Jayhawk for remuneration under several theories including indemnity. Jayhawk claimed that it did not have to remunerate H & L because under their contract, Jayhawk did not have to pay for damages covered by H & L's insurance policy. Both parties moved for summary judgment. The circuit court denied H & L's motion and granted Jayhawk's. We reverse and remand.

**Factual and Procedural Background**

H & L was hired by KCHR Senior Care, LLC (KCHR) to build a senior living facility. KCHR and H & L executed a General Contract that required H & L to indemnify KCHR against all liabilities arising from "any defect in the Work or equipment or materials used to perform the Work" and in several other circumstances in which H & L or its subcontractors were at fault. In section 3.18.4, the parties then waived "their respective rights of recovery against each other for Injuries covered by the standard Causes of Loss—Special Form (formerly 'All Risk') and Business Income insurance policies

used in the state where the Project is located at the time the Injury is incurred."

H & L then hired Jayhawk to install fire sprinklers and perform all necessary tasks associated with installing and maintaining a fire sprinkler system such as complying with the applicable codes. H & L and Jayhawk executed a Subcontract that required Jayhawk to indemnify H & L against "all liability, loss, cost damage or expense arising out of its failure" to replace parts of the project and its content damaged or moved as a result of "defect in material or workmanship" within a year of final acceptance of the project. In paragraph 3, the parties agreed that H & L had the "same rights and privileges hereunder against [Jayhawk] in relation to the work hereunder" as KCHR had against H & L "under the General Contract."

Subsequently, KCHR accepted the project on November 26, 2007. A few weeks later, on December 6, 2007, "a leak occurred in a fitting connecting the sprinkler line to a sprinkler head," causing damage to the floors and the furniture of the facility. KCHR informed H & L, who paid for the damages through its insurer. H & L filed a claim against Jayhawk's insurer but was unsuccessful. Jayhawk refused to reimburse H & L because H & L's insurer was responsible for covering the damages. H & L brought a subrogation action against Jayhawk; the petition contained nine counts including negligence, breach of contract, and indemnification. Jayhawk filed an answer, alleging several affirmative defenses.

Thereafter, the parties entered into a stipulation of undisputed facts as stated above. H & L filed a motion for summary judgment on its breach of contract claims. Jayhawk also filed a motion for summary judgment on the affirmative defense of waiver of subrogation rights/claim. The trial court found that language within the Subcontract incorporated the waiver of subrogation rights from the General Contract, which barred the subrogation action against Jayhawk. Consequently, the trial court granted Jayhawk summary judgment. H & L appeals.

## Standard of Review

Our review of a trial court's decision to grant summary judgment is *de novo.* *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.,* 126 S.W.3d 820, 823 (Mo. App. W.D.2004). In determining the propriety of the summary judgment, we use the same criteria the circuit court used in determining whether to grant summary judgment: a movant must show that there is no genuine dispute as to the material facts and that it was entitled to judgment as a matter of law. *Id.* at 823–24. We view the record and any accompanying reasonable inferences in the light most favorable to the non-movant. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993). The movant has the burden of proving that no genuine issue of material fact exists and that it has a right to judgment as a matter of law. *Nodaway,* 126 S.W.3d at 824; *ITT,* 854 S.W.2d at 382.

## Legal Analysis

In its first point, H & L argues that the trial court erred in finding that H & L waived its rights to subrogation because it disregarded paragraph 19 of the Subcontract requiring Jayhawk to indemnify H & L. In its second, third, and fourth points, H & L argues that the trial court erred in finding that H & L waived its right to subrogation because it misinterpreted the Subcontract by disregarding its plain and unequivocal language. Because these points challenge the trial court's interpretation of the Subcontract, we discuss them together.

To receive summary judgment for its affirmative defense of waiver of subrogation, Jayhawk had to show: (1) a contractual provision waiving H & L's right to subrogation to claims covered by insurance, (2) H & L's contractual obligation to maintain insurance was effective at the time of property damages, and (3) the property damages were covered under that required property insurance. *See Butler v. Mitchell–Hugeback*, 895 S.W.2d 15, 21–22 (Mo. banc 1995); *see also Knob Noster R–VIII Sch. Dist. v. Dankenbring*, 220 S.W.3d 809, 818–19; *Nodaway*, 126 S.W.3d at 826, 828, 831.

The trial court found that paragraph 3 of the Subcontract clearly granted H & L the same rights against Jayhawk as KCHR had against H & L under the General Contract. It further found that under the General Contract, section 3.18.4.2, KCHR waived any rights of subrogation to claims covered by insurance against H & L, and "specifically, [the] 'Contractor Party,' which included any subcontractors, expressly or impliedly as a third-party beneficiary of the General Contract." It concluded that because H & L had no greater rights against Jayhawk under the Subcontract than existed under the General Contract, H & L's claims were barred under the waiver of subrogation rights pursuant to section 3.18.4 of the General Contract.

■■ We interpret contracts to ascertain the parties' intent and give effect to that intent. *Nodaway*, 126 S.W.3d at 825. In doing so, we assign the plain and ordinary meaning to the terms of the contract and "consider the document as a whole." *Id.* (internal quotation marks and citation omitted). An instrument that incorporates specific sections of another instrument must be construed together with the original instrument, but such construction is limited to the incorporated language's

specified purpose. *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 845 (Mo.App. E.D. 2008).

H & L argues that the trial court disregarded paragraph 19 of the Subcontract in its interpretation because the plain and unequivocal language within that paragraph necessitates a finding that Jayhawk had a duty to indemnify H & L. H & L further states that to find otherwise would render paragraph 19 meaningless. Paragraph 19, in part, states that Jayhawk will indemnify H & L for damages paid to KCHR for "all liability, loss, cost damage or expense" resulting from its defective materials and labor within one year from KCHR's final acceptance of the project. Jayhawk asserts that the trial court did not disregard paragraph 19 but rather followed the reasoning in *Nodaway*.

In *Nodaway*, this court limited the enforcement of an indemnification clause to only those claims not covered by insurance to harmonize the provision with a valid waiver of subrogation clause. *Nodaway*, 126 S.W.3d at 829–30. The owner had sued the contractor and subcontractor for damages caused by a fire that the subcontractor accidentally started. *Id.* at 823. The parties' contract contained an indemnification clause and a waiver of subrogation rights. *Id.* at 825–26. We harmonized the two provisions because we determined that they did not conflict in that the indemnification clause was concerned with third-party claims, whereas the waiver of subrogation concerned first-party claims. *Id.* at 829–30. Thus, we concluded the waiver of subrogation precluded the owner from suing the contractor and subcontractor for the damages that were covered by the contractually-required property insurance. *Id.* at 822, 830–31. H & L claims that *Nodaway* is inapplicable because, contrary to the trial

court's finding, the Subcontract does not contain a waiver of subrogation.

■ We do not have to determine the propriety of the trial court's interpretation of paragraph 3 of the Subcontract incorporating the waiver of subrogation rights in section 3.18.4 of the General Contract because Jayhawk is entitled to the waiver as a third-party beneficiary[1] of the General Contract. *See Knob Noster*, 220 S.W.3d at 818 n. 3; *Nodaway*, 126 S.W.3d at 826 n. 4; *Butler*, 895 S.W.2d at 21.

■ Contrary to H & L's contention on appeal, the language within section 3.18.4 does in fact "automatically extend the waivers or releases to the Subcontract" and "can bind future, unknown subcontractors, not parties to the original Construction Contract." Clear provisions within the general contract limiting liability may relieve other parties of liabilities as third-party beneficiaries of that agreement. *Butler*, 895 S.W.2d at 21.

■ Section 3.18.4 of the General Contract states in pertinent part:

The parties mutually Release their respective rights of recovery against each other for Injuries covered by the standard Causes of Loss—Special Form (formerly 'All Risk') and Business Income insurance policies in the state where the Project is located at the time the Injury is incurred, whether or not such policies are actually required or carried under this Contract.

Under section 3.18 "INDEMNIFICATION," the parties include the "Contractor Parties" and the "Owner Parties." "Contractor Parties" includes "(C) all Subcontractors and other persons and entities over whom Contractor has control." Clearly, Jayhawk, H & L's subcontractor, is a third-party beneficiary of the General Contract. Thus, Jayhawk showed that H & L waived its right of subrogation against Jayhawk. Applying the reasoning in *Nodaway*, Jayhawk's duty to indemnify H & L for claims caused by its negligence is limited to those claims not covered by insurance. *See Nodaway*, 126 S.W.3d at 822, 830–31. The trial court therefore did not err in finding a waiver of subrogation rights between the parties to claims covered by insurance.

■ However, our inquiry does not end here because entitlement to summary judgment under these facts also required that Jayhawk show H & L's contractual obligation to maintain insurance was effective at the time of the leak. The waiver of subrogation rights applies "so long as the insurance was required to be maintained under the agreement." *See Butler*, 895 S.W.2d at 22. In *Butler*, our supreme court decided "the construction contract and waiver of subrogation provisions of the General Conditions were still in effect," although the project had been completed when the roof collapsed, because pending obligations between the parties required insurance to still be maintained under the contract. *Id.*

Here, it is unclear whether the General Contract and, consequently, the waiver were still in effect at the time of the leak. Under the General Contract, H & L had to maintain insurance until the later date of the following occurrences: "Contractor receives Final Payment or the last day any Contractor-related person is physically present on the Project (whether or not this

---

1. A third-party beneficiary is "[o]ne for whose benefit a promise is made in a contract but who is not a party to the contract." BLACK'S LAW DICTIONARY 1480 (6th ed.1990). "A third-party beneficiary can sue to enforce the con-

tract if the contract terms 'clearly express' an intent to benefit either that party or an identifiable class of which the party is a member." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. banc 1993).

contract has ended)." Although the parties stipulated that the owner accepted the construction work on November 26, 2007, there is no mention if this acceptance included H & L's final payment which would support an inference that H & L's obligation to maintain insurance had been terminated. Nor does the stipulated fact that H & L's insurance paid for the damages prove that H & L was still obligated to maintain insurance. Rather, it simply indicates that the policy was still effective. This appellate court found that a policy still effective after a project has been completed does not "extend [the waiver of subrogation] beyond the life of the contract." *Auto. Ins. Co. of Hartford, CT v. United H.R.B. Gen. Contractors, Inc.*, 876 S.W.2d 791, 795 (Mo.App. E.D.1994). Thus, the trial court erred in finding that the waiver of subrogation rights precluded H & L from receiving remuneration from Jayhawk because a genuine dispute exists as to whether the waiver was valid.

Moreover, assuming the waiver was still in effect, genuine issues as to material facts still exist as to whether the damages were covered by the required insurance. H & L is correct that the fact its insurance paid the damages does not conclusively show that those damages were covered by the terms of the insurance required under the General Contract. *See Knob Noster*, 220 S.W.3d at 816, 818–19 (finding insurance terms did not cover damages although the insurance company had paid them because payment was made based on extended coverage). H & L did not concede that its insurance company paid the damages under the terms of its required policy. Thus, this material fact is still disputed. Because material facts are in genuine dispute, summary judgment in Jayhawk's favor was improper.

## Conclusion

Therefore, we reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

SMART and ELLIS, JJ., concur.