RLI INSURANCE COMPANY,
Appellant–Respondent,

v.

SOUTHERN UNION CO., d/b/a
Missouri Gas Energy, Re-
spondent–Appellant.

Nos. WD 71851, WD 71874, WD 71972.

Missouri Court of Appeals,
Western District.

May 31, 2011.

Nikki Cannezzaro, Kansas City, MO, for appellant-respondent.

David R. Schlee, Vincent R. McCarthy and Truman K. Eldridge, Jr., Kansas City, MO, for respondent-appellant.

Before Division Two: JAMES M. SMART, JR., Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

This is an appeal by RLI Insurance Company ("RLI") from an order granting summary judgment in favor of Southern Union Company doing business as Missouri Gas and Energy ("MGE") on a subrogation claim originally asserted by RLI's insured, Triumph Foods LLC ("Triumph"). MGE has filed a cross appeal. Because we conclude that MGE was an intended third party beneficiary of a waiver of subrogation provision in a contract Triumph signed, we affirm.

**Facts and Procedural History**

On October 12, 2005, a natural gas explosion destroyed a portion of a hog processing plant ("Plant") owned by Triumph in St. Joseph, Missouri. The Plant was under construction at the time. The explosion was caused by the ignition of leaking gas inside the Plant. The report from the Missouri Division of Fire Safety relating to the explosion stated, in part, "[t]he cause of this explosion and fire was listed as accidental due to the evidence that a natural gas valve in the kitchen had been installed and left open and uncapped." The suspect valve was not installed or opened by MGE.

RLI was Triumph's builder's risk insurer. As a result of the explosion at the Plant, RLI paid Triumph $7,990,000.00 for the cost to reconstruct the Plant. Triumph also claimed that it sustained conse-

quential and lost business income damages from the explosion which were not covered by the RLI policy.

Triumph filed suit against MGE and several other defendants. Counts seven through ten of Triumph's third amended petition asserted various theories of recovery against MGE, and sought to recover Triumph's consequential and lost business income damages ("Lost Business Income Damages") and the $7,990,000.00 paid by RLI to Triumph under the builder's risk insurance policy ("Subrogation Damages").[1] In response to the third amended petition, MGE asserted an affirmative defense of waiver of subrogation.

Prior to the explosion, and in order to undertake construction of the Plant, Triumph retained a construction manager, A. Epstein and Sons International, Inc. ("Epstein"). Triumph used a standard American Institute of Architects ("AIA") A101/CMa form of contract to enter into several contracts with contractors whose efforts were required to construct the Plant ("AIA Contract"). In each AIA Contract, Triumph was named as "Owner," the entity with whom Triumph contracted was named as "Contractor," and Epstein was named as the Construction Manager.

Each AIA Contract incorporated General Conditions of the Contract for Construction ("General Conditions"). The General Conditions contained a "Waiver of Subrogation" provision at paragraph 11.3.7 which provided:

The Owner and Contractor waive all rights against each other and against the Construction Manager, Architect,

---

1. The recovery of the Subrogation Damages, though appropriately pursued by Triumph, would ultimately have benefitted RLI. "In Missouri there is a distinct difference between an assignment of a claim and subrogation to a claim. When there is an assignment of an entire claim there is a complete divestment of all rights from the assignor and a vesting of those same rights in the assignee; but, in a case of subrogation, only an equitable right passes to the subrogee and the legal right to the claim is never removed from the subrogor and remains with him throughout." *Holt v. Myers,* 494 S.W.2d 430, 437 (Mo.App.1973).

*Owner's other Contractors and own forces described in Article 6,* if any, and the subcontractors, sub-subcontractors, consultants, agents and employees of any of them, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as the Owner and Contractor may have to the proceeds of such insurance held by the Owner as fiduciary *and except for damages caused by the Contractor's breach of the Contract or damages covered by any insurance maintained, or required, under this Contract to be maintained, or required under this Contract to be maintained by Contractor.* The Owner or Contractor, as appropriate, shall require of the Construction Manager, Construction Manager's consultants, Architect, Architect's consultants, Owner's separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(Emphasis added to italicized and bold text; underlined text in original.)

Paragraph 6.1.1 of the General Conditions addressed the "Owner's Right to Perform Construction with Own Forces and to Award Other Contracts," and provided:

The Owner reserves the right to perform construction or operations related to the Project with the *Owner's own forces, which include persons or entities under separate contracts not administered by the Construction Manager.* The Owner further reserves the right to award other contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided elsewhere in the Contract Documents.

(Emphasis added.)

Triumph separately contracted with MGE on July 1, 2005 ("MGE Contract"). The MGE Contract required MGE to transport natural gas to the Plant. Triumph and MGE did not use the AIA Contract form to enter into the MGE Contract. The MGE Contract did not discuss or identify Triumph's use of a Construction Manager.

MGE constructed a gas distribution line from its existing gas main to the Plant, and constructed and installed a gas meter and pressure regulating equipment at the northeast corner of the Plant. The MGE Contract did not expressly require MGE to undertake these construction activities. MGE did not charge Triumph for construction of the gas distribution line or for installation of the meter and pressure regulating equipment. MGE continued to own the gas line and equipment after it was installed. The MGE Contract provided that Triumph was solely responsible for installing "[a]ny and all piping, appliances, equipment or facilities . . . required to uti-

lize gas service beyond the point of delivery."

The MGE Contract incorporated a Gas Rate Schedule LV and MGE's "general terms and conditions for gas service." The MGE Contract did not incorporate the AIA Contract or the General Conditions. The MGE Contract did not contain a waiver of subrogation provision, and was silent on the subject of subrogation.

MGE filed a motion for summary judgment on July 17, 2009. With respect to the Subrogation Damages, MGE alleged that it was a third party beneficiary to the waiver of subrogation provision in the General Conditions.[2] MGE also asserted that its tariff on file with the Missouri Public Service Commission imposed complete responsibility on Triumph for natural gas issues arising after the point of delivery, and served as a complete defense to all claims and damages asserted by Triumph. MGE also asserted that there was no legal basis for Triumph to recover its Lost Business Income Damages, to recover its attorneys' fees, or to recover on a claim for breach of the express warranty of merchantability.

On September 23, 2009, the trial court entered an order granting in part and denying in part MGE's motion for summary judgment ("Summary Judgment Order"). The trial court held that MGE was entitled to judgment as a matter of law on the Subrogation Damages (sought in each of counts seven through ten). The trial court held that MGE was entitled to judgment as a matter of law on the breach of express warranty of merchantability claim (count eight), and on Triumph's claim for attorney's fees (sought in each of counts seven through ten). The trial court denied

the motion for summary judgment with respect to MGE's argument that its tariff served as an absolute defense to each of Triumph's claims, and with respect to MGE's argument that Triumph could not recover Lost Business Income Damages.

As a result of the Summary Judgment Order, counts seven, nine, and ten seeking consequential and Lost Business Income Damages were left unresolved. The unresolved issues were set for trial in November, 2009. In early November, 2009, counsel for MGE and Triumph requested removal from the trial docket, and advised the trial court that they had reached a settlement agreement. The settlement agreement reserved Triumph's right to appeal the Summary Judgment Order's entry of judgment in MGE's favor on the Subrogation Damages. Triumph and MGE could not yet stipulate to dismissal of the unresolved issues set for trial, however, as the settlement agreement remained subject to formal approval by MGE's board of directors. The trial court set the case on its dismissal docket on December 4, 2009, and advised the parties that if a stipulation of dismissal was not filed by that date "there will be a dismissal entered by the Court without prejudice."

On November 23, 2009, the trial court entered an interlocutory judgment and order dismissing with prejudice all of Triumph's claims against defendants *other* than MGE based on a stipulation filed by the involved parties.

By December 4, 2009, Triumph and MGE had not filed a stipulated dismissal of the unresolved issues set for trial. The trial court denied a request for additional

---

2. Triumph sought the Subrogation Damages in each of counts seven through ten of its third amended petition under the alternative theories of strict liability (count seven), breach of express warranty of merchantability (count eight), breach of implied warranty of merchantability (count nine), and breach of implied warranty of fitness (count ten).

time to complete the documentation of the parties' settlement agreement. On December 7, 2009, the trial court entered an order denominated final judgment ("Final Judgment"). The Final Judgment incorporated by reference the November 23, 2009 interlocutory judgment and order (which involved defendants other than MGE). The Final Judgment did not mention the Summary Judgment Order. The Final Judgment dismissed *without prejudice* counts seven through ten of Triumph's third amended petition, the counts asserted against MGE.

Triumph then filed an appeal from the Summary Judgment Order's grant of judgment in favor of MGE on the Subrogation Damages.[3] MGE filed a cross appeal from the Summary Judgment Order's denial of MGE's claim that its tariff served as a complete defense to Triumph's ability to recover the Subrogation Damages.

After this appeal was filed, RLI took a full assignment of Triumph's interests in the Subrogation Damages. RLI then sought and secured leave from this Court to be substituted as the appellant in lieu of Triumph pursuant to Rule 52.13(c).[4]

### Summary of Issues on Appeal/Jurisdiction

RLI raises two points on appeal. RLI claims that the trial court erred: (1) because the contract between Triumph and MGE did not include a waiver of subrogation clause and exclusively governs the relationship between the parties; and (2) because MGE was not an intended third party beneficiary to the waiver of subrogation provision set forth in the General Conditions and thus made a part of the AIA Contract. MGE raises two points on cross appeal. MGE contends that the trial court erroneously denied as an additional basis for summary judgment, the effect of its tariff which, because it was incorporated into the contract with Triumph (point one), or because it otherwise had the force and effect of law (point two), served as a complete defense to any claims by Triumph for damages arising after the point of natural gas delivery into the Plant.

Before we reach the merits of the points raised on appeal, we must first address MGE's contention, raised for the first time in its respondents/cross-appellant's reply brief, that this court does not have jurisdiction to entertain this appeal.[5] MGE observes that the Summary Judgment Order was interlocutory as it addressed some, but not all, of the damage claims asserted by Triumph in counts seven through ten. MGE also observes that the trial court's Final Judgment dismissed counts seven though ten without prejudice, and without mention of the Summary Judgment Order. MGE argues that the Final Judgment effectively vacated the Summary Judgment Order's substantive determination involving the Subrogation Damages, and then dismissed the Subrogation Damages without prejudice. MGE thus argues that this Court lacks jurisdic-

---

**3.** The record does not reflect whether MGE and Triumph completed their settlement agreement documentation after the entry of the Final Judgment. However, during oral argument, counsel for MGE confirmed that the settlement agreement with Triumph was finalized after the entry of the Final Judgment. Counsel also confirmed the finalized settlement agreement contained a caveat to the release provisions permitting pursuit of an appeal from the Summary Judgment Order's

rejection of Triumph's effort to recover the Subrogation Damages.

**4.** See footnote 1.

**5.** MGE also filed a motion to dismiss raising the same issue asserted in its reply brief with respect to our jurisdiction to entertain this appeal. MGE's motion to dismiss is denied as moot.

tion to entertain RLI's appeal because RLI could simply refile a lawsuit seeking recovery of the Subrogation Damages. We disagree.

■ It is true that the entry of a final judgment by dismissal without prejudice is generally not appealable. *State ex rel. Dos Hombres–Independence, Inc. v. Nixon*, 48 S.W.3d 76, 79 (Mo.App. W.D. 2001). However, the mere entry of an order denominated "final judgment" does not require us to conclude that *prior* dispositive, albeit interlocutory, orders not mentioned in the judgment have been summarily vacated. In fact, our Supreme Court has held to the contrary. In *Magee v. Blue Ridge Professional Building Co.*, 821 S.W.2d 839, 841 (Mo. banc 1991), the trial court granted a motion to dismiss a defendant for failure to state a claim. The plaintiff later voluntarily dismissed all remaining defendants without prejudice, then appealed the trial court's grant of the motion to dismiss. *Id.* Our Supreme Court held that a "final judgment" dismissing without prejudice remaining claims or defendants renders earlier interlocutory orders entered as to other claims or defendants final. *Id.* at 842 (overruling *Bolin v. Farmers Alliance Mutual Insurance Co.*, 549 S.W.2d 886 (Mo. banc 1977)). In short, if the combined effect of several orders entered in a case, including an order denominated "final judgment," is to dispose of all issues as to all parties, leaving nothing for future determination, then the *collective* orders combine to form the "final judgment" from which an appeal can be taken. *Id.*

■ We conclude that although the Final Judgment dismissed without prejudice counts seven through ten of Triumph's third amended petition, it did so only to the extent there remained claims for damages, or theories of recovery, not otherwise resolved by the Summary Judgment Order.[6] As a result, and in accordance with *Magee*, the Summary Judgment Order combined with the Final Judgment to collectively form the "final judgment" in this case. Stated another way, upon entry of the Final Judgment, the Summary Judgment Order became final for purposes of appeal. We will not construe an order denominated "final judgment" as having the *per se* effect of vacating the trial court's previously entered dispositive orders unless the final judgment expresses the trial court's intent to do so, or unless the peculiar circumstances of the case permit no other reasonable conclusion.

■ We also note that although a dismissal without prejudice is not normally a final judgment from which an appeal can be taken, there is an exception to this general rule. "[A]n appeal can be taken where the dismissal has the practical effect of terminating the litigation in the form presented...." *State ex rel. Dos Hombres–Independence*, 48 S.W.3d at 79. The trial court granted partial summary judgment in favor of MGE on the Subrogation Damages based on MGE's substantive argument that it was a third party beneficiary to the waiver of subrogation clause in the General Conditions. Thus, even if the Final Judgment could be construed to include the Subrogation Damages within the scope of the dismissal without prejudice, it

**6.** As the Final Judgment was entered over the objection of MGE and Triumph, we can reasonably assume that is was not prepared by counsel for one of the parties. A trial court has a natural desire to insure that its order denominated "final judgment" in fact resolves all issues and claims as to all parties. It is logical to presume, therefore, that the trial court would not have spent time parsing through the court file to determine with precision exactly what remained pending in counts seven through ten of the third amended petition requiring dismissal.

would be futile for RLI to refile a petition against MGE seeking recovery for the Subrogation Damages.[7] We conclude that the Final Judgment operated as a final determination on the merits with respect to the Subrogation Damages claim.[8]

We have jurisdiction to entertain this appeal. We turn our attention to a discussion of the merits.

## RLI's Issues on Appeal

### Standard of Review

■■■■ Our review from an order granting summary judgment is essentially *de novo*, and as such we will apply the same criteria as the trial court to determine if summary judgment was appropriate. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the non-moving party, drawing all inferences in their favor. *Id.* The trial court's grant of summary judgment will be upheld only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 380. "[A] 'defending party' may establish a right to judgment by showing ... that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's proper-

ly-pleaded affirmative defense." *Id.* at 381; Rule 74.04(c).

### Point One

In its first point on appeal, RLI contends that the trial court erred in granting summary judgment in favor of MGE with respect to the Subrogation Damages because the MGE Contract exclusively defined the relationship between MGE and Triumph, and did not include a waiver of subrogation provision, barring MGE from claiming third party beneficiary status under another contract. We disagree.

The MGE Contract did not include a waiver of subrogation clause. In fact, the MGE Contract was silent on the subject of subrogation. The MGE Contract *expressly* incorporated some extraneous documents by reference (such as the Gas Rate Schedule LV and MGE's general terms and conditions for gas service), and did not reference or incorporate the General Conditions. The MGE Contract contained an integration clause and a provision requiring any modifications to be in writing and executed by both parties.

Based on these circumstances, RLI argues that MGE is precluded as a matter of law from claiming that it was an intended third party beneficiary under another contract. RLI cites no authority for this

---

7. Moreover, it appears it would be impossible for RLI to do so. Counsel for MGE admitted during oral argument that it believes the statute of limitations to recover the Subrogation Damages has run, and that the "one year savings clause" prescribed by section 516.030 has expired.

8. MGE filed a cross appeal and did not question our jurisdiction to hear either RLI's appeal or its cross appeal until January 12, 2011, after this appeal had been pending for nearly thirteen months. MGE's delay in raising the issue of our jurisdiction is not dispositive, as the question of our jurisdiction to entertain an appeal can be raised at anytime,

and even *sua sponte* by this Court. However, we do not endorse MGE's failure to raise the issue of our jurisdiction until after it believed the statute of limitations on the claim to recover the Subrogation Damages (including the protection of the Savings Clause) had expired. Our concern is enhanced by MGE's assertion of a cross appeal in supposed reliance on our appellate jurisdiction, and by MGE's acknowledged inclusion of a provision in its settlement agreement with Triumph of a provision excepting the Subrogation Damages Claim from the scope of the settlement as to permit an appeal of the Summary Judgment Order to be taken. See footnotes 3 and 7.

sweeping proposition. In contrast, our Supreme Court has specifically rejected the contention that a third party cannot enforce a waiver of subrogation provision unless that clause is part of the parties' own contract. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995).

 It is true that Missouri law presumes a written contract is the final memorial of the parties' agreement, and that an integration clause further "confirms the all-inclusive nature of the document." *Frisella v. RVB Corp.,* 979 S.W.2d 474, 477 (Mo.App. E.D.1998). However, an integration clause in a contract is primarily intended to prevent one party to a contract from claiming an agreement with the other party to the contract that is at variance with the written contract. 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS section 33:23, (4th ed. 1999) ("[E]vidence of a collateral agreement is not barred by the parole evidence rule if such evidence does not contradict the written contract.") Here, the MGE Contract is silent on the subject of subrogation. Thus, there is no evidence that MGE and Triumph had an agreement that would be at variance with affording MGE third party beneficiary status under a waiver of subrogation provision in a separate contract signed by Triumph. We conclude that a third party is not foreclosed from claiming third party beneficiary status, though the third party has a contract with one of the parties to the contract under which third party beneficiary status is claimed, so long as the third party's contract is either silent on the subject of, or

does not expressly negate, the rights claimed as a third party beneficiary.[9]

Point One is denied.

## Point Two

In its second point on appeal, RLI argues that the trial court erred in granting summary judgment in favor of MGE with respect to the Subrogation Damages because MGE was not an intended third party beneficiary to the waiver of subrogation provision in the General Conditions of the AIA Contract.

 "A third party beneficiary is '[o]ne for whose benefit a promise is made in a contract but who is not a party to the contract.'" *Haren & Laughlin Const. Co. v. Jayhawk Fire Sprinkler Co.,* 330 S.W.3d 596, 600 n. 1 (Mo.App. W.D.2011) (citation omitted). "'A third-party beneficiary can sue to enforce the contract if the contract terms "clearly express" an intent to benefit either that party or an identifiable class of which the party is a member.'" *Id.* (citation omitted). The fact that the third-party beneficiary is not identified by name in the contract does not bar that party from enforcing the terms of the contract, if the party fits into the identifiable class of persons. *Kansas City N.O. Nelson Co. v. Mid–Western Const. Co. of Mo.,* 782 S.W.2d 672, 677 (Mo.App. W.D.1990).

 The General Conditions to the AIA Contract describe an identifiable class of persons intended to benefit from the waiver of subrogation provision set forth in paragraph 11.3.7. A waiver of subrogation provision in a construction contract is "a mechanism for reducing litigation by preventing claims from arising, and by

---

9. We observe that the outcome may be different where a third party seeking to enforce a waiver of subrogation provision as a third party beneficiary has a contract with the purported obligor containing a contradictory provision. *See* RESTATEMENT (SECOND) OF CONTRACTS Section 309 cmt. c (1981) ("The conduct of the beneficiary ... may give rise to claims and defenses which may be asserted against him by the obligor, and his right may be affected by the terms of an agreement made by him.")

substituting the contractual protection of insurance for the uncertain and expensive protection of liability litigation." *Indiana Ins. Co. v. Erhlich*, 880 F.Supp. 513, 518 (W.D.Mich.1994). Here, the Owner (Triumph) and the Contractor (the entity with whom Triumph contracted using the AIA Contract) each agreed to *"waive all rights against each other and against the Construction Manager, Architect,* **Owner's other Contractors and own forces described in Article 6** ... for damages caused by fire or other perils to the extent covered by property insurance...." (Emphasis added.)

Clearly, MGE is not the Construction Manager or Architect. However, if MGE falls into the identifiable class of "Owner's other Contractors and own forces described in Article 6," then MGE is an intended third party beneficiary of the waiver of subrogation provision entitled to enforce its terms against Triumph, *see Haren & Laughlin*, 330 S.W.3d at 600 (holding that subcontractor is entitled to enforce waiver of subrogation as third party beneficiary of general contract), and against RLI, who stands in the shoes of Triumph as Triumph's subrogee. *Holt*, 494 S.W.2d at 444.

■■■■ RLI and MGE agree that our construction of Article 6 in the General Conditions is controlling on the issue of whether MGE was one of Triumph's "other Contractors and own forces described in Article 6," and thus was an intended third party beneficiary of the waiver of subrogation provision set forth in paragraph 11.3.7. Contract interpretation is a question of law, which we review *de novo. Lee v. Bass*, 215 S.W.3d 283, 288 (Mo.App. W.D.2007). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428

(Mo. banc 2003). We read the terms of a contract as a whole to determine the intention of the parties and we give the terms their plain, ordinary and usual meaning. *Id.* We construe each term of a contract to avoid rendering other terms meaningless. *Id.* A "construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.*

RLI contends that MGE is not within the identifiable class of intended beneficiaries described in paragraph 11.3.7:(a) because MGE was not one of Triumph's "other Contractors," as the term "Contractor" is defined in the AIA Contract in a manner which excludes MGE, and (b) because MGE was not one of Triumph's "own forces" because it did not perform construction or operations related to the Project. We need not detain ourselves with a discussion of the first of these two contentions as the second is dispositive.

■■■■ It is uncontested that the provision of a gas service line to the Plant was essential to the Plant's ultimate operation. Triumph's Chief Executive Officer, Ricci Hoffman, testified in a deposition that "establishment of natural gas service was necessary for the project to proceed to the point where [Triumph] could process hogs in the way that [Triumph] contemplated." Triumph's Chief Operating Officer, Mark Campbell, testified in his deposition that in order to transport gas to the Plant, MGE had to set a meter, and to construct a distribution line from an existing main to the meter. The Chief Operating Officer also testified that MGE agreed to perform this work "as part of the contract with Triumph." Though the MGE Contract was not designated as a "construction contract," and was instead designated as a "gas transportation contract," MGE and Triumph clearly anticipated that in order

for MGE to transport gas to the Plant, a gas distribution line, and necessary metering and regulatory equipment, had to be constructed and installed by MGE. MGE could not have transported natural gas to the Plant without undertaking these construction activities.

We conclude, therefore, that MGE's activities fall within the plain, ordinary, and common sense meaning ascribed to the phrase "construction or operations related to" the Project set forth in paragraph 6.1.1. MGE undertook its activities as a result of the obligations undertaken by it in the MGE Contract. The MGE Contract was "a separate contract not administered by the Construction Manager," an additional prerequisite to a contract being treated as one between Triumph and its "own forces" under paragraph 6.1.1. We necessarily conclude, therefore, that MGE was one of Triumph's "own forces" as that term is used in paragraph 6.1.1. As such, MGE is included within the identifiable class of persons covered by the waiver of subrogation provision set forth in paragraph 11.3.7.

RLI attempts to constrain the inclusion of MGE's work within the scope of "construction or operations related to the Project" by reliance on the definition of "Project" set forth in paragraph 1.1.4 of the General Conditions. "Project" is defined as "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by other Contractors and by the Owner's own forces including persons or entities under separate contracts not administered by the Construction Manager." We see nothing in this definition which suggests that MGE's activities were not related to the "Project" as defined, particularly given the fact the definition of "Project" expressly includes within its scope "the total con-

struction of which may include . . . construction . . . by the Owner's own forces." As such, RLI's reliance on *Denny's Inc. v. Avesta Enter., Ltd.,* 884 S.W.2d 281 (Mo. App. W.D.1994) to argue that MGE was not part of the identifiable class of persons intended to benefit from the waiver of subrogation provision in the General Conditions is misplaced. In *Denny's* the trial court held that Denny's, the restaurant, was not a third party beneficiary to an indemnity provision in a lease agreement between a mall owner and another mall tenant because Denny's did not fall within the class of persons described by the provision. *Id.* at 290–91. The lease agreement described the identifiable class of persons to be benefitted by the indemnity provision as six specifically identified department stores and *"any other department store* lessee, owner and/or operator in the Shopping Center. . . ." *Id.* at 290 (emphasis added). The trial court found that Denny's was not a "department store lessee, owner, and or/operator" in the Shopping Center. *Id. Denny's* stands for the simple proposition that the determination of whether a third party falls within an identifiable class of intended beneficiaries is a matter of contract construction. Employing the same principles, we have concluded that MGE was one of Triumph's "own forces described in Article 6," and thus was within the identifiable class of intended beneficiaries to the waiver of subrogation provision in the General Conditions.

Finally, RLI argues that paragraph 11.3.7 of the General Conditions required Triumph to include a waiver of subrogation provision in any "separate" contract it entered into. Since the MGE Contract did not include such a provision, RLI argues it is not a "separate" contract under Article 6. We disagree. If Triumph breached paragraph 11.3.7 of the General

Conditions by entering into the MGE Contract without including a waiver of subrogation provision in the contract, then RLI, as the subrogee of Triumph, is in no position to wield Triumph's breach as a sword. *Holt*, 494 S.W.2d at 444.

Our conclusion serves the policy underlying the use and enforcement of waiver of subrogation provisions. A waiver of subrogation provision " 'in effect simply require[s] one of the parties to the contract to provide [property] insurance for all of the parties.' " *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 828 (Mo.App. W.D.2004) (quoting *Tokio Marine & Fire Ins. Co., Ltd. v. Employers Ins. of Wausau*, 786 F.2d 101, 105 (2d Cir.1986)). The objective of a waiver of subrogation clause is to enhance the effectiveness of insurance procurement clauses. *Id.* Insurance procurement clauses reflect an " 'intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk ... instead.' " *Id.* (quoting *Acadia Ins. Co. v. Buck Constr. Co.*, 756 A.2d 515, 519 (Me.2000) (citation omitted)). The waiver of subrogation clause thus " 'avoids *both* parties having to face potential liability for the *same* risk.' " *Id.* (quoting *Acadia Ins. Co.*, 756 A.2d at 519). Including MGE within the scope of intended third parties beneficiaries afforded protection by the waiver of subrogation provision set forth in paragraph 11.3.7 of the General Conditions negates the motivation MGE would otherwise have to pursue claims of contribution against the Construction Manager, subcontractors, or other persons or entities alleged to have been involved in creating the circumstances giving rise to the explosion. In fact, it is apparent that paragraph 11.3.7's specific reference to Owner's other forces as a class of persons covered by the waiver of subrogation provision was intended to afford the trades who did sign Triumph's AIA Contract the precise protection represented by the outcome of this case.

Point Two is denied.

## MGE's Cross Appeal

MGE was an intended third party beneficiary of the waiver of subrogation provision in the General Conditions. We affirm the Summary Judgment Order's entry of judgment in favor of MGE. It is thus unnecessary for us to address MGE's claim in its cross appeal that the trial court erred in denying summary judgment on the Subrogation Damages for the alternative reason that MGE's tariff served as a complete defense to Triumph's claims.[10]

## Conclusion

The trial court's Summary Judgment Order entering judgment in favor of MGE with respect to the Subrogation Damages is affirmed.

All concur.

---

**10.** Even had we found merit in RLI's claim that MGE was not a third party beneficiary entitled to enforce the waiver of subrogation provision in the General Conditions, we would have been disinclined to entertain MGE's cross appeal. A trial court's denial of summary judgment is not appealable unless the merits of the denial are so intertwined with the merits for granting summary judgment as to render a decision on appeal essentially dispositive of both issues. *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568–69 (Mo.App. W.D.2011). Here, the legal effect of MGE's tariff is not inextricably intertwined with whether MGE was a third party beneficiary of the waiver of subrogation provision, but is instead an argued alternative basis for granting summary judgment in MGE's favor.